## BELLE DULANEY ET AL. v. GEO. WALSH ET AL.

### Decided January 25, 1897.

1. **Probate Court—Jurisdiction.**

   The determination of a proceeding by creditors to compel the executors to apply to the payment of debts the proceeds of an insurance policy on the life of deceased, which had been bequeathed to his widow and son, was a proper exercise of probate jurisdiction. (P. 332.)

2. **Disqualification of County Judge—Transfer to District Court.**

   The amendment to sec. 16, art. 5 of the Constitution, adopted Sept. 22, 1891, providing that in case of disqualification of the County Judge "a competent person may be appointed," is permissive, not mandatory, and did not repeal the laws previously in force authorizing transfer of such cases to the District Court; and such court properly obtained and retained jurisdiction of a case transferred to it after such amendment to the Constitution and before the passage of the Act of April 26, 1893, which provided that on such disqualification a special judge should be appointed but, by its terms, did not affect cases already transferred. (Pp. 333, 334.)

3. **Estates of Decedents—Bequest of Insurance—Rights of Creditors.**

   The decision of the Court of Civil Appeals in this case (37 S. W. Rep., 615) holding the proceeds of an insurance policy bequeathed by deceased to his widow and son subject to the payment of his debts, approved. (P. 334.)

ERROR to Court of Civil Appeals, Second District, in an appeal from District Court of Nolan County. Defendants in error instituted the proceeding by motion in the District Court, in the probate proceedings therein pending. Plaintiffs in error appealed from a judgment holding the fund subject to the claims of creditors, and the judgment was affirmed.

The following are extracts from the opinion of the Court of Civil Appeals, by TARLETON, CHIEF JUSTICE.

"2. Under the undisputed fact that during the course of the administration the estate of N. I. Dulaney became insolvent, and that it was neces-

sary to resort to this insurance fund to pay its just debts, it is not believed to be material whether at the time of the execution of the will or of the death of the testator he was or was not insolvent. As we have seen, the policy was made payable, not to the widow or the child, or to the heirs of the deceased (as in Mullins v. Thompson, 51 Texas, 7), but to N. I. Dulaney, his executors, administrators or assigns. As we have also seen, the title to the fund passed to his estate.

"The bequest to Mrs. Dulaney and the child was, by the express terms of the will, subject to the payment of the debts; and if it had not been, the law would have thus subjected it, for the law withholds from the legatee the delivery of the property bequeathed until after the payment of the debts. Revised Statutes, art. 2010.

"Hence, as it appears that during the course of administration, whatever may have been its condition in its inception, the estate dwindled into insolvency, to such an extent as to absorb this fund in the payment of the debts, it became the duty of the court to direct the application of the proceeds, the property of the testator, at once according to the directions in the will and according to the provisions of the law. If the estate of Dulaney, exclusive of this insurance fund, had consisted at his death and at the date of the probate of the will of a stock of merchandise largely in excess of his debts, and if this merchandise had been burned before it had been sold or its proceeds applied to the debts, no question could be made, we think, that for the payment of the debts resort could and should have been had to this fund, the title to which was in the estate. Such should be the result, as against innocent and diligent creditors, whatever might have been the cause of the insolvency arising during the administration of the estate.

"The fourth, eleventh and thirteenth assignments of error are thus overruled.

"3. We do not regard this proceeding as an assault upon the provisions of the will, nor do we think that the judgment annuls that instrument The judgment rendered during the pendency of the administration but recognizes the terms of the will, which did not, and under the law could not, bequeath the insurance money free from the debts of the testator. Hence the defense of four years' limitation urged in this connection could not apply."

*J. F. Eidson, Cowan & Fisher, K. K. Legett* and *S. P. Hardwicke,* for plaintiffs in error.—The court was without jurisdiction to enter the judgment herein, because the issue to be, and which was decided, was as to whether said insurance money belonged to the estate, or belonged to the trustees, or belonged to Belle and Edward N. Dulaney, and the Probate Court had not jurisdiction to entertain and determine such issue. When an administration is transferred to the District Court by reason of the disqualification of the county judge, the District Court exercises and has only the powers of a Probate Court. Mayo v. Tudor, 74 Texas, 471; Bradley v. Love, 60 Texas, 472.

The Probate Court has not jurisdiction to determine the disputed is-- sue, whether parties hold property as executors or as testamentary trustees. The Probate Court has not jurisdiction to determine as between executors and third parties the ownership of property. The Probate Court has not jurisdiction to determine issues as to third parties when rights arising by reason of estoppel, limitation, and trusts are involved. White v. White, 32 S. W. Rep., 48; Edwards v. Mounts, 61 Texas, 398; Howze v. Howze, 14 Texas, 232.

A solvent testator can make a valid gift by will and title and ownership will vest in donee. Rev. Stats., arts. 2545, 2546, 2010.

Subsequent insolvency will not avoid a gift made while solvent.

The court erred in rendering judgment herein because, the fund in question being proceeds of insurance on the life of testator, he had the right to assign and dispose of same by will, and having done so, the creditors have no right to question such disposition. When a life insurance policy is payable to the assured, his executors, administrators or assigns, and the assured assigns the policy or its proceeds by will, the assignee will take title free from the claims of creditors. "Assigns" comprehends those who take by devise. Mullins v. Thompson, 51 Texas, 7; 2 White & W. App. C., sec. 401; Winfield's Adjudged Words and Phrases, p. 51.

When a will has been probated its provisions control unless the same are annulled or suspended by order of the court probating same. Rev. Stats. arts. 1991-2-3-4; Orr v. O'Brien, 55 Texas, 149; Steele v. Renn, 50 Texas, 467.

Application to annul and suspend the provisions and directions of a will must be filed within four years from the probate of the will. Rev. Stats. arts. 3358, 3364, 3365; Orr v. O'Brien, 55 Texas, 149.

*H. C. Hord, J. H. Beall, Fred Cockrell,* and *Jas. E. Cockrell,* for defendant in error.—The insurance policy being payable to the executors, administrators or assigns of the insured, and the insured having died insolvent and without having made any disposition of said policy other than by his will, which directed that all his just debts should be paid, and which did not expressly except said policy from the payment of his debts, the specific bequest thereof to his wife and child was subject to his debts, and the policy by said will passed to his executors as assets for the payment of his debts. Cooper v. Horner, 62 Texas, 356; 13 Am. & Eng. Enc., Law, 650 and 631, and notes and cases cited; Hathaway v. Sherman, 61 Me., 466; Burton, Admr. v. Farinholdt, 86 N. C., 260; Rawson v. Jones, Admr., 52 Ga., 458; Coddington v. Bispham, 36 N. J. Eq., 224; Bliss on Life Ins., 592.

The fact that testator was in extremis when the will was executed could in no manner affect the legal principles embodied in the foregoing proposition; gifts causa mortis are subject to administration for payment of debts of donor. Bouvier's Law Dic., Citing 1 Phil., Ch. 406; 18 Ala., 27.

Even if a testator by the terms of his will devises and bequeaths all his property, and expressly provides that no part of it shall be liable for his debts, and the will is duly probated, his property in the hands of his

executors is nevertheless charged by law with the payment of his debts, and his devisees and legatees take it charged with the debts by the expressed provisions of law, and it is not necessary for creditors to have a declaration to that effect from the Probate Court, or to formally set aside the provisions of the will which declares the property shall pass free from debts; the provisions of the law ipso facto annul any such terms of the will. Rev. Stats. arts. 1869, 2091, 2008, 2009, 2010, 2002, 2103; Rev. Stats. arts. 1867, Williams on Exrs. (7th ed.), 1372; Drury v. Natick, 10 Allen (Mass.), 174; Newcomb v. Williams, 9 Met. (Mass.), 525; 1 Black, 429; Re James, 65 Cal., 25.

GAINES, CHIEF JUSTICE.—A brief history of the facts and proceedings which gave rise to this application for a writ of error is as follows: One N. J. Dulaney died January 11, 1890, having made his will, in which three of the applicants were nominated as executors. The will was probated in the County Court on the 7th day of February, 1890, and on the same day the executors duly qualified. The will bequeathed to the testator's wife, Belle Dulaney, and his son Edward N. Dulaney, a policy of insurance on his life for $10,000, and devised and bequeathed to them also all his separate estate. The legatees named were also to share in the residue not specifically bequeathed or devised; and the executors were made trustees of the funds to arise from all property so bequeathed and devised to them, with certain powers not necessary to be here stated. On the 23rd day of December, 1892, the administration was transferred to the District Court on account of the disqualification of the County Judge. The executors, in pursuance of the powers conferred upon them by the will, collected the insurance money, and, save the interest, had the fund under their control at the time of the trial—whether as executors or trustees, we need not determine. On April 11, 1894, the defendants in this application, as creditors, filed a motion in the District Court to require the executors to apply the insurance money to the payment of the debts of the estate. Another motion of a like character was filed April 17, 1895, which was contested by the executors, as well as by the widow and son of the testator. It was upon this contest that the case was tried: The trial resulted in a judgment for the creditors, which, upon appeal, was affirmed by the Court of Civil Appeals.

The applicants urged as their first objection to the judgment, that the District Court was without jurisdiction to determine the case. This assignment is based upon the proposition, that the motion was instituted as a part of the proceedings in the matter of the estate of the testator as administered in the District Court, and that a Probate Court had no power to determine the matters at issue between the parties. The contention was, that defendants in error should have brought an original action in the District Court. The defendants in the application, on the other hand, insisted in the District Court, as well as in the Court of Civil Appeals, that the determination of the case was a proper exercise of probate jurisdiction. We think, that the Court of Civil Appeals correctly held,

that it was a proper probate proceeding, but when we granted the writ of error, we also thought that the effect of the amendments of the judiciary article of the Constitution, adopted in 1891, was to repeal the Statute which authorized the transfer of a probate matter to the District Court when it should appear that the County Judge was disqualified to act; and that therefore the District Court did not have jurisdiction of the case. It was upon this ground alone that we granted the writ of error.

We now think that we made a mistake in granting the writ. Original section 16, article 5, of the Constitution of this State contained this language: "Any case pending in the County Court which the County Judge may be disqualified to try, shall be transferred to the District Court of the same county for trial; and where there exists any cause disqualifying the County Judge for the trial of a cause of which the County Court has jurisdiction, the District Court of such county shall have original jurisdiction of such cause." But that section was amended September 22, 1891, and in lieu of that provision, the following was adopted: "When the judge of the County Court is disqualified in any case pending in the County Court, the parties interested may by consent appoint a proper person to try said case, or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law." If this latter was the sole provision found in the amendments in relation to the subject, we should adhere to our former ruling; but a previous section of the same article, after providing the remedy in case of the disqualification of a judge of any one of the higher courts having appellate jurisdiction, as well as of a judge of the District Court, prescribes, that "the disqualification of judges of inferior tribunals shall be remedied and vacancies in the offices filled in such manner as may be prescribed by law." Const. art. 5, sec. 11.

These amendments to the Constitution repealed only such existing laws as were repugnant to them; and at the time they went into effect there were statutes in existence which prescribed, that when the county judge should be disqualified to try any case, it should be transferred to the District Court and that such court should have original jurisdiction thereof. (Sayles Ann. Stats. arts. 1139 and 1121.) Are these provisions repugnant to the amendments? Had the Legislature power, after the amendments were adopted, to provide, that in case of the disqualification of the County Judge, the District Court should have original jurisdiction of the case? If so, they were continued in force until repealed by some subsequent statute either expressly or by implication. Now, if the provision which has been quoted from section 16 had been mandatory, since it applies specially to the County Judge, we should construe it as pointing out the only method by which the disqualification of that officer was to be remedied. But the language is: "a competent person may be appointed in such manner as may be prescribed by law." This is the language of permission and not of command; and we construe it as having been intended to confer a discretionary power upon the Legislature over

the subject matter and not to limit the more general power conferred by section 16. Hence we are of the opinion that the Legislature had authority to provide either that in the contingency mentioned the case should be transferred to the District Court or that a special judge should be appointed. The Statute for the transfer to the latter court, therefore, as we think, remained in force until the act of April 26, 1893, took effect. This latter act declared that "when a County Judge is disqualified to act in probate matters in any cause, he shall forthwith certify his disqualification in such case to the Governor, whereupon the Governor shall appoint some person to act as special judge in said case, who shall act from term to term until such disqualification ceases to exist;" but it also contained a proviso to the effect that the District Courts should retain jurisdiction of all causes which had been previously transferred to them on account of the disqualification of the County Judge. (Gen'l Laws 1893, p. 75). Therefore we conclude, that since the proceedings in matter of the estate of Dulaney had already been transferred to the District Court when this act took effect and were then pending in that court, it properly retained jurisdiction over the estate as a Probate Court.

This disposes of the only difficulty which suggested itself to us when this writ was granted. But since the submission, we have carefully considered the whole case, and still think that all the issues raised by the assignment of error in the Court of Civil Appeals were properly determined by that court. We concur in their opinion and refer to it for the grounds of our conclusion.

The judgments of the District Court and of the Court of Civil Appeals are affirmed.

*Affirmed.*