## LARKIN P. GRIFFIN ET AL. v. D. H. ZUBER ET AL.

### Decided November 12, 1908.

#### 1.—Indemnity Bond—Construction.

An indemnity bond given by a surety company which prepares the instrument and selects the language used, should be construed, it seems, most favorably to the insured.

#### 2.—Postmaster—Indemnity of Bondsmen—Embezzlement.

In a bond given by a postmaster and a surety company to indemnify the sureties on the official bond of the former against liability for acts of "embezzlement" committed by him, the word is to be construed as defined and used in the laws of the United States, not in accordance with the Penal Code of Texas.

#### 3.—Same.

Embezzlement by a postmaster, under the laws of the United States, includes any conversion of the funds in his hands, though done without criminal intent and with the intention of replacing them, and any failure to account for stamps intrusted to him for sale.

Appeal from the County Court of Gregg County. Tried below before Hon. Edwin Lacy.

*Turner & Campbell,* for appellants.—If the language of a bond is doubtful, or if the same is ambiguous, or if it is hard to arrive at the intent of the parties, all the surrounding circumstances must be looked to to ascertain the intent of the bond, and the acts of the parties done in carrying out the contract must be looked to to determine its intent and purpose. Parker v. McKelvin, 17 Texas, 157; Bank v. Peek, 65 Am. Dec., 234, 28 Vt., 200; Hotchkiss v. Barnes, 91 Am. Dec., 713; Marks v. Co-Operative Ass'n, 17 Texas Civ. App., 408; Fletcher v. Jackson, 23 Vet., 587, 56 Am. Dec., 98; Steel Co. v. Clark, 87 Ill. App., 658, 24 Am. & Eng. Ency. of Law, 66 H.

If a surety contract admits of two fair interpretations, one for and one against the guarantor, the words used are to be accepted in the strongest sense against the guarantor, but the court accepted same in the most favorable way to the guarantor. Guaranty Co. v. Bank, 80

Fed., 772; Surety Co. v. Pauly, 170 U. S., 144; Cotton v. Fidelity Co., 41 Fed., 506; 12 Am. & Eng. Ency. of Law, 10; Marx v. Luling Ass'n, 17 Texas Civ. App., 408; Lemp v. Armengol, 86 Texas, 691, 693; Johnson v. Bailey, 79 Texas, 517; Davis v. Wells, 104 U. S., 159; Page v. Sewing Machine Co., 12 Texas Civ. App., 331.

As shown by assignment of error No. 2, the court finds as a matter of law "that embezzlement is purely a statutory offense, and as to such offense it is said there must be an evil intent, though the statute is silent on the subject. To constitute embezzlement it is necessary that there shall be a criminal intent. There must be, as in larceny, a fraudulent intent to deprive the owner of his property and appropriate the same." This is error, because the better opinion is that these terms should be taken in their ordinary sense, and because it is not necessary that the acts of Dr. Zuber should have been such as to subject him to an indictment and a conviction for larceny and embezzlement, or either of these offenses. Storage Co. v. Bonding Co., 75 S. W., 197; 19 Cyc., 518, par. C; Surety Co. v. Pauly, 170 U. S., 133; Bank v. Insurance Co., 95 U. S., 673; Anderson v. Fitzgerald, 4 H. L. Cas., 483; Fidelity Co. v. Bank, 33 L. R. A., 821, 54 Am. St. Rep., 440; Champion Co. v. Am. Co., 103 Am. St. Rep., 356; European Society v. Bank, 77 Rev. Leg., 57.

*Young & Stinchcomb,* for appellees.—The liability of a guarantor can not be extended by implication beyond actual terms of the contract, and the case must be brought strictly within the terms of the guaranty, when reasonably interpreted, or the guarantor will not be liable. Smith v. Montgomery, 3 Texas, 209; Durrell v. Farwell, 88 Texas, 107; Miller v. Stewart, 9 Wheat., 680; Warren v. Lyons (notes to), 9 L. R. A., 353; Best v. Johnson (notes to), 3 L. R. A., 168.

When the terms of the contract clearly show the intention of the parties, the courts must give effect to that intention, and are not at liberty to look to the subject matter and the attending circumstances in order to give it a different construction. Lemp v. Armengol, 86 Texas, 692; Guarantee Co. of N. A. v. Mechanics Savings Bank, 183 U. S., 402; 1 Words and Phrases, 251.

It is a fundamental principle that when the intent of the guarantors has been ascertained, or the terms of the guaranty are clearly defined, the liability of the guarantor is absolutely controlled by such intent, and is never to be extended beyond the precise terms. Bornefield v. Wettermark, 22 S. W., 997; 20 Cyclopedia of Law and Proc., 1426; Guarantee Co., etc., v. Mechanics Savings Bank, etc., 183 U. S., 399.

Embezzlement is a fraudulent appropriation of another's property by a person to whom it has been entrusted or into whose hands it has lawfully come; and the word "embezzlement" employed in a bond guaranteeing against larceny or embezzlement only means embezzlement as defined in the criminal law, and unless it is proved, the surety is not liable. Reed v. Fidelity & Casualty Co., 42 Atl., 294; Cyclopedia of Law and Proc., vol. 19, 488.

The appellee bond company having only indemnified Zuber's sureties against personal act or acts of larceny or embezzlement, no judgment could have been rendered against appellee, as no larceny or embezzle-

ment was proven. Mitchell v. Dallas, 1 Texas Civ. App., 52; Edrington v. Kiger, 4 Texas, 93; Bedwell v. Bedwell, 71 S. W., 983..

HODGES, ASSOCIATE JUSTICE.—This is a suit instituted by the appellants, as sureties on the bond of D. H. Zuber, to recover of the Fidelity & Deposit Company the sum of $229.44. The facts show that during the year 1903 D. H. Zuber was appointed postmaster at the town of Kilgore; that the appellants were sureties on his bond as such; that they became such sureties with the understanding that they were to be indemnified against certain liabilities that might arise by reason thereof. Shortly after the induction of Zuber into office, for the purpose of indemnifying the appellants, he executed a bond with the Fidelity & Deposit Company as surety, conditioned:

"Whereas, Daniel H. Zuber has been appointed Postmaster at Kilgore, Texas; and

"Whereas, the rules and regulations of the Postoffice Department of the United States required said Daniel H. Zuber (hereinafter called 'Postmaster') to file with it a bond, with approved securities, guaranteeing the faithful discharge of all duties incumbent upon him by reason of his appointment as Postmaster, and the honest accounting of all moneys coming into his hands as said Postmaster belonging to the United States of America; and Whereas, Larkin P. Griffin, Philip E. Barton, George A. Erwin, William A. Crim and Richard W. Wynn, Jr. (hereinafter called the 'Assured'), all of the State of Texas, have qualified or consented to qualify as sureties upon said bond, conditioned as above on behalf of said Postmaster with the express understanding that a bond of indemnity would be given them, indemnifying them to the extent of the sum of two thousand ($2,000) dollars collectively, and no further, from loss which might accrue to them by reason of any personal act or acts of larceny or embezzlement committed by the said Postmaster in the discharge of his duties as Postmaster as aforesaid; and

"Whereas, for a valuable consideration the Fidelity and Deposit Company of Maryland (hereinafter called the 'Company'), a corporation of the State of Maryland—Baltimore, Maryland—has consented to join with said Postmaster in a bond of indemnity, indemnifying said Assured, as aforesaid;

"Now, therefore, in consideration of the foregoing premises, and the payment of five ($5.00) dollars per annum to the Company, receipt of which is hereby acknowledged, the said Postmaster for himself, his heirs, executors and administrators, and the said Company for itself, its successors and assigns, jointly and severally do hereby covenant, promise, and agree to indemnify and keep indemnified the said Assured to the extent of the sum of two thousand ($2,000) dollars collectively, and no further, during the period beginning December 23, 1903, and ending December 23, 1907, from and against any and all loss which they might be put to, incur or suffer, by reason of any personal act or acts of larceny or embezzlement committed by the said Postmaster in the performance of the duties of Postmaster, and committed during the continuance of this bond, and discovered at any time within six months after the expiration or cancellation of this bond, or in case of the death, resignation or removal of the said Postmaster from the said office prior to the expira-

tion or cancellation of this bond, within six months after such death, resignation or removal," etc. Zuber remained postmaster at Kilgore until the 21st day of March, 1906, at which time he either resigned or was removed from office. It was then found that he was short in his account with the government in the sum sued for. This sum was paid by his sureties, the appellants in this case, and they bring this suit against Zuber and the Fidelity & Deposit Company for reimbursement.

The testimony shows further that Zuber, as pastmaster, kept two accounts: one called "the money-order account," of which he was required to make monthly reports to the Postoffice Department, the other called his "postal account," of which he was required to make quarterly reports. An examination of the reports of the money-order account shows that on the 30th day of August, 1905, there was a balance due from Zuber to the government of $318.96; by the 31st of October this amount had increased to $481.28; on November 30th it was reduced to $166.95, and on December 31st it amounted to $234.03; on January 31, 1906, it was $137.90, and on March 21st, at the time Zuber went out of office, it amounted to $129.41. The reports of the postal account show that for the quarter ending September 30, 1905, Zuber had a credit of $80.55; that for the quarter ending December 31, 1905, he was due the government $99.69; that for the quarter ending March 21, 1906, he was due $94.81. The testimony fails to show how these shortages occurred. In his testimony Zuber says that he did not get any of the money, and when asked the question as to how he accounted for the shortage if he did not get the money, he answers: "I can not account for it unless it was errors in my daily records. I attribute these errors to Mr. Stanton; one of them was in his handwriting, I know." In another place he answers that he did not get any of the money of which he was short.

The county judge finds—and we think it is sustained by the statement of facts—that during the months of October, November and December Zuber was in bad health, and was unable to devote his entire time to the postoffice; that during that time there were other parties at work in the office, among whom was Zuber's daughter, who, the testimony shows, had charge of the office as assistant postmaster during the last eight days of his term. He also finds that Mr. Stanton, who was Zuber's son-in-law, assisted him at times in making out his reports and in his work around the office; that Zuber examined the cash books every day, and when he was not there the daily cash receipts of the office were turned over to him every day during the three months mentioned, and were either delivered to him at the office or at his home by some of his employes; that he checked over his books every day during said period, and if the amounts turned over to him did not correspond he balanced the same by either adding to or taking from said amounts that had been turned over to him; that he personally checked the cash book with the daily statements, with the exception of a few times when it was done by another employe. He further finds that there were errors in Zuber's accounts with the Postoffice Department, and that one of these errors was occasioned by Zuber's son-in-law, who assisted him in making up his general report. This error amounted to $100 in Zuber's favor, and was not discovered until the next succeeding report was made up. The court concludes as a matter of law that the terms "larceny" and "embezzle-

ment," as used in the bond, are to be taken in the sense in which they are employed in criminal law; he concludes that "embezzlement means the fraudulent appropriation to his own use and benefit of property or money intrusted to him by another, like a clerk, agent, trustee, public officer or other person acting in a fiduciary capacity." He concludes also that as the evidence wholly fails to show that Zuber had any criminal intent, or fraudulent purpose to appropriate the amounts to his own use, if they were appropriated, and that the bond company having only contracted to indemnify the plaintiffs against Zuber's personal act or acts of larceny and embezzlement, the appellants were not entitled to recover. He renders judgment against Zuber in favor of the sureties for the amount which they paid, but in favor of the Fidelity & Deposit Company against the sureties.

The judgment is attacked in various assignments of error complaining of the construction placed by the court upon the words "larceny" and "embezzlement." In his conclusions of law the court says: "That embezzlement is purely a statutory offense, and as to such offense it is said 'there must be an evil intent, though the statute is silent on the subject.' I Bish., New Cr. Law, 345. So, in 10 Am. & Eng. Ency. of Law (2d ed.), 996, it is said: 'To constitute embezzlement it is necessary that there shall be a criminal intent. There must be, as in larceny, a fraudulent intent to deprive the owner of his property, and to appropriate the same. Eilers v. State, 34 Texas Crim. Rep., 344.

"As the evidence shows that defendant Zuber was the agent of the U. S. government and intrusted with the property in question, that, of course, negatives the larceny proposition in the case. And as the evidence wholly fails to show that Zuber had any criminal intent or fraudulent intent to appropriate said amounts to his own use, if they were appropriated, and said bond company having only contracted to indemnify the said plaintiffs against Zuber's personal act or acts of larceny and embezzlement, I find for the defendant bond company." The appellants insist that in construing a contract of indemnity like the one here under consideration, where the language used is susceptible of more than one construction, that interpretation should be adopted which is most favorable to the party indemnified. This contention is based upon the fact that the appellee company is engaged in the business of making such contracts of indemnity for a consideration, and that it prepared the obligation and selected the language used. Generally speaking, we think that rule is correct, and we see no reason why it should not be applied to the contract now before us, but we see no necessity for resorting to that rule in the interpretation of the language here used. We think the term "embezzlement," as used in the contract sued on, has a well-defined signification which should be adopted in determining the liability of the company in this suit. At the time of the execution of this bond Zuber was in the service of the federal government, acting in the capacity of a postmaster. If he at any time became guilty of the offense of embezzlement within the meaning of the statute governing the duties and prescribing penalties for their violation, he would be amenable to the federal law, and that law should determine the meaning of the word "embezzlement" as used in the bond. Whatever may be the interpretation placed upon the word "embezzlement" in common parlance, or whatever

signification it should have in construing the statutes of the different States, we think in this controversy the sense in which it is used in the federal statute governing Zuber's line of duty should be the one to which we must look for the proper construction. Whether or not Zuber is guilty of having embezzled any of the funds committed to his custody must be determined by the laws of the United States made for his guidance in handling those funds. Section 4046, U. S. Com. Statutes, provides: "Every postmaster, assistant, clerk or other person employed in or connected with the business or operations of any money-order office, who converts to his own use in any way whatever, or loans, or deposits in any bank except as authorized by this title, or exchanges for any other funds any portion of the money-order funds, shall be deemed guilty of embezzlement." Section 4053 provides that: "If any officer, agent, postmaster, clerk or other person employed in any branch of the postal service," etc., "and any person intrusted by law with the sale of postage stamps or of stamped envelopes, who shall refuse or neglect to account for the same, or who shall pledge or hypothecate or unlawfully dispose of them for any purpose, shall be deemed guilty of embezzlement," etc. From the foregoing extracts it will be observed that the offense of embezzlement may arise from two different courses of conduct in regard to public funds. The law undertakes to define specifically the conduct which is prohibited, and then denominates it "embezzlement" and fixes the penalty. It follows, therefore, that when one is guilty of the acts there denounced he is guilty of embezzlement within the meaning of the term as used in this bond.

Zuber, as the postmaster at Kilgore, was intrusted with money order funds as well as postage stamps and stamped envelopes. If he converted the one, or failed to account for the other, he was guilty of embezzlement. We think section 4046 was intended to absolutely prohibit any appropriation by the postmaster, or any other employe, of any of the money-order funds coming into his hands as such. United States v. Gilbert, 25 Fed. Cases, No. 15,205; State v. Silva, 32 S. W., 1007. So guarded is the law in this respect that it makes it embezzlement to deposit any of the funds in any bank except as authorized by that title, or to exchange them for any other funds, or to loan them. These barriers were evidently erected in order to prevent any appropriation whatever of those funds to private use, without regard to whether the purpose was fraudulent or otherwise. In the first case above cited the court says: "It would seem that the agreed statement of facts substantiates the embezzlement by both these methods, and although it is true that the funds were subsequently paid in to the Cleveland postoffice, and although it may also be, and probably was, true that these funds when thus converted were intended and expected to be replaced, so that the government should sustain no loss, which go very far towards mitigating the offense, yet it is obvious that the enforcement of this section in all its strictness is essential to this class of government funds, and to the discouragement of postmasters from even temporarily using them for private purposes. The intention of replacing them, however honestly entertained, can not be accepted as an excuse or an apology for violating the law, as one may be disappointed by unexpected circumstances, and thus not only endanger the moneys of the government, but involve himself in difficulty and crim-

inal prosecution.   The law intends that funds of this character should be kept absolutely separate and sacred as the best method, not only of keeping the funds themselves secure, but of guarding the officers themselves from temptation and delinquency.   The diversion of money-order funds in any way whatever, prohibited by this section, or for any time, however short, constitutes embezzlement under this Act, and it is punishable as such."   The conversion of money-order funds is the forbidden act; and when that act is knowingly done the offense is complete, it matters not what the intention of the wrongdoer may have been in doing it, or as to making reparation in the future.   Section 4053, relating to accounting for postage stamps and stamped envelopes, is equally as guarded in its language.   Here even the neglect to account for those articles is made an offense denominated "embezzlement."

In view of the facts developed in the trial of this case, and the construction which the court announced in his conclusions of law he had placed upon the term "embezzlement," we think the judgment should be reversed.   We think the court was in error in placing so restricted an interpretation upon the term, unless he meant by the language used a criminal intent within the meaning of the federal law which should determine what should constitute embezzlement as applied to the particular facts of this case.   It would appear, however, from the authorities upon which he seems to rely, that he adopted the general signification of the term; and if so, this probably determined the character of the judgment he rendered.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*