TEXAS FIDELITY & BONDING COMPANY v. CITY OF AUSTIN.

No. 3390.   Decided December 20, 1922.

(246 S. W., 1026.)

1.—Taxation—Insurance Company—Deposit of Securities—Situs.

Article 4749, Revised Statutes, (sec. 38 of Act of March 22, 1909), fixing the situs for taxation of securities deposited with the State by certain insurance companies at the place of their home offices (held to be constitutional in Great Southern Life Ins. Co. v. City of Austin, 112 Texas, 1) was first made applicable to companies incorporated for a fidelity and surety business by the adoption of section 55 of that Act, previously invalid, as article 4955, in the Revised Statutes of 1911.   American Indemnity Co. v. City of Austin, 112 Texas, 239.   Its *situs* previous to September 1, 1911, was otherwise governed.   (pp. 232, 233).

2.—Same—Trust Fund.

Securities deposited with the State by a fidelity and surety company in accordance with article 4928, Revised Statutes, constituted a trust fund of which the State Treasurer was trustee with title as such (Rev. Stats., art. 4930, 4935) in the county of his office; and it was his duty to there render them for taxation as such for the year 1911.   (pp. 233-237).

3.—Same—Constitutional Construction.

The readoption by enactment of the Revised Statutes of a statute which had formerly received construction by the Court of Civil Appeals, apparently approved by the refusal of a writ of error by the Supreme Court, while not in all respects authoritative, was strongly persuasive that in its reenactment the Legislature adopted it with the effect given it by such construction. (p. 236).

4.—Insurance Company—Deposit of Securities—Situs for Taxation.

Securities (municipal bonds) deposited with the State in Travis County, as required by statute, by a domestic fidelity and surety company, constituted such personal property as was capable of obtaining a situs for taxation in such county, and, in the absence of a statute otherwise providing, were taxable there, and not in the county of the home office of the company.   State v. Fidelity & Deposit Co. of Md., 35 Texas Civ. App., 214; Guaranty Life Ins. Co. of Houston v. City of Austin, 108 Texas, 209.   (p. 237).

5.—Insurance—Bonding and Surety.

Bonding and surety corporations are insurance companies within the meaning of the Texas statutes (Rev. Stats., art. 4956).   By article 4955, Revised Statutes, the laws regulating other insurance companies are made applicable to them, including articles 4749, 4764, Revised Statutes, which make their personal property taxable only in the county of the home office. American Indemnity Co. v. City of Austin, 112 Texas, 239, followed.   (pp. 238, 239).

6.—Case Stated.

A domestic bonding and surety company having its home office in Waco, McLennan County, deposited securities with the State Treasurer in Austin, Travis County, as required by the laws of the State to enable it to do business.   In an action by the City of Austin to recover taxes thereon for the several years 1911 to 1916, inclusive, it is *held* that those for the year 1911 were recoverable; but those for subsequent years were properly taxable in McLennan, and not in Travis county.   (p. 239).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Travis County.

The City of Austin sued the Fidelity and Bonding Co. to recover city taxes. Plaintiff had judgment which was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Stribling & Stribling,* for plaintiff in error.

Where personal property is placed on deposit with the State Treasurer in compliance with the mandatory requirements of a statute as a condition precedent to the complete organization of a corporation and its right to exercise its corporate functions, such deposit is not a voluntary surrender of the possession of such property, and is not made for a business purpose and advantage, inuring to the benefit of the corporation, by which the situs of such property for purpose of taxation is distinct and different from that of the owner's domicile. Article 1121 R. S., 1911, sub. sec. 37; Acts of 1903, page 197; Articles 7503, 7505, 7510, R. S., 1911; Ferris v. Kimble, 75 Texas, 476; Guaranty Life Insurance Company v. City of Austin, 190 S. W., 189; Hall v. Miller, 102 Texas, 289; 115 S. W., 1168; State v. Fidelity & Deposit Co. of Md., 80 S. W., 544; Guaranty Life Insurance Co. v. City of Austin, 165 S. W., 53; Jesse French Piano & Organ Co. v. City of Dallas, 61 S. W., 943.

We submit, that to hold the securities of the appellant subject to taxation by the appellee would be contrary to a sound public policy of the State as declared and recognized by the provision of Art. 4749 R. S. 1911, and Chapter 40 of the Acts of the Fourth Called Session, Thirty-fifth Legislature, General Laws, page 69. Section 2.

The appellant being authorized under its amended charter of date, September 21, 1912, to insure any person against bodily injury, disablement or death resulting from accident, and against disablement resulting from disease, and having continued the deposit of securities sought to be taxed with the State Treasurer, continuously thereafter under Chapter 117, page 237, of the Acts of the Legislature of Texas, 1911, it thereby became and was an accident, and a health and accident, insurance company organized under the laws of the State within the meaning of Article 4749 R. S. 1911; and for the purpose of municipal taxation, the situs of such property so deposited by appellant was at its home office in the City of Waco, McLennan County, Texas, and not in the City of Austin, and no judgment should have been rendered in favor of the appellee for taxes due on such securities for the years 1913 to 1916, inclusive. Chapter 117, page 237, Acts of the Legislature of Texas, 1911; Article 4749 R. S., 1911; Article 4955 R. S., 1911; Acts of 1909, page 108, section 1-38.

*J. Bouldin Rector,* City Attorney, *J. W. Maxwell* and *E. B. Robertson,* for defendant in error.

The trial court correctly held, as a matter of law, that the bonds and securities deposited by the defendant with the State Treasurer at Austin at the time defendant was granted a charter as a surety company and in compliance with the provisions of the Statute under which the defendant was incorporated, thereby acquiring a fixed, permanent situs in the City of Austin, distinct from the place of defendant's domicile, were therefore subject to taxation by the City of Austin. Guaranty Life Ins. Co. v. City of Austin, 190 S. W., 189; S. C., 165 S. W., 53; Hall v. Miller, 102 Texas, 289, 115 S. W., 1168; State v. Fidelity and Deposit Co., 80 S'. W., 544; Jesse French Piano & Organ Co. v. City of Dallas, 61 S. W., 943.

The court did not err in rendering judgment against the defendant for the taxes assessed against the securities deposited by it with the State Treasurer for the years 1911-1912, being the years prior to the time when defendant's charter was amended. Revised Statutes, Article 1121, Subdivision 37, Acts of 1903, page 197; State v. Fidelity & Deposit Co., 80 S. W., 544; Guaranty Life Insurance Co. v. City of Austin, 190 S. W., 189.

The court did not err in holding as a matter of law, upon the agreed facts, that Chapter 108 of the Acts of 1909 did not apply to the defendant, for the reason that the defendant was originally incorporated at a surety company and deposited the securities in controversy, as such surety company, and thereafter amended its charter so as to be authorized to transact a surety, and a casualty insurance business, and having made the deposits originally as a surety company and continued the deposits as a surety and casualty company, the provisions of said Chapter 108 of the Acts of 1909, relating to and affecting life, health, and accident insurance companies, had no application to defendant and the Court properly rendered a judgment against the defendant for the taxes sued for.

Revised Statutes, Article 1121, Subdivision 37, Chapter 117, page 237, Acts of 1911; National Surety Co. v. Murphy-Walker Co., 174 S. W., 997; Western Indemnity Co. v. F. & A. Masons, 198 S. W., 1092; Chapter 108, Acts of 1909, Sections 1 and 38.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

The plaintiff in error, the Texas Fidelity & Bonding Company, is a private corporation, chartered on April 20, 1910, under Chapter 127, General Laws of the Twenty-eighth Legislature (1903), which became Subdivision 37, Article 1121, and also Article 4928, Chapter 13, Title 71, Revised Statutes 1911. The home office of the Company is, and has always been, at Waco, McLennan County, Texas. The objects and purposes of the Company as originally set forth in its charter, in general terms, were those of a fidelity and surety business. All the powers granted in the statute were included in the purpose clause of the charter.

The charter was amended on September 21, 1912, and to the objects before stated were added others, which authorized the Company to transact casualty and other classes of insurance named in Chapter 117, Acts of 1911, permitting the incorporation of casualty insurance companies. Whether or not such an amendment was permissible under the law, is not an issue here, and under our view of the case is immaterial. The petition alleges in its initial paragraph that plaintiff was "duly incorporated and organized and licensed under and by virtue of the laws of the State of Texas for the purpose of doing a surety, fidelity, bonding, and casualty insurance business."

The defendant in error, the City of Austin, a municipal corporation, filed this suit against plaintiff in error in Travis County on April 14, 1917, for the purpose of recovering certain ad valorem taxes alleged to be due the City for the years 1911 to 1916, both inclusive, the amounts for each year being separately specified. The claim was that the taxes sought to be collected were due on securities deposited by the plaintiff in error with the State Treasurer at Austin under the laws of the State.

The original deposit consisted of municipal bonds of the City of Midland, aggregating $50,000.00, which were in the hands of the Treasurer on the first day of January, 1911. The deposit was changed some time after January 1, 1915, so that on January 1, 1916, the deposit consisted of the City of Midland bonds, of the aggregate amount of $46,000.00, and three promissory notes in the total sum of $4500. The deposit of securities was originally made under the Surety and Fidelity Company Act, but were continued after plaintiff in error's charter was amended under the Casualty Insurance Law, Chapter 117, Acts 1911. All the securities were those in which the capital stock of plaintiff in error had been invested. It is against these securities for each of the years 1911 to 1916 that the taxes are claimed, and for which judgment was rendered by the trial court on December 20, 1917. Upon appeal by plaintiff in error the judgment was affirmed by the Court of Civil Appeals on April 16, 1919. The case is before us on writ of error.

We will first discuss the liability of plaintiff in error for the taxes claimed on the securities in the hands of the Treasurer on January 1, 1911.

While we have sustained the constitutionality of Rev. Stats., Article 4749, originally enacted in 1909, (Great Southern Life Ins. Co. v. City of Austin, 112 Texas, 1, 243 S. W., 778) ; which fixes the situs for taxation of deposits such as these at the home office of the depositing company, yet that Article of the Code, which was Section 38, Acts of 1909, was not applicable generally to other than life, health, and accident insurance companies, until Section 55 of that Chapter was incorporated in the Revised Statutes of 1911 as Article

4955, which we have held was constitutional and effective from September 1, 1911. American Indemnity Co. v. City of Austin, not yet published (112 Texas, 239, 246 S. W., 1019.

On January 1, 1911, there was no law applicable to plaintiff in error which fixed the situs of securities deposited by it with the State Treasurer at its home office. The question of the situs of this property must then be determined by laws in existence January 1, 1911. The statutes applicable to plaintiff in error at that time were Subdivision 37, Article 1121, Revised Statutes, and others which will be noted.

The Subdivision of the statute from which the purpose clause of plaintiff in error's charter was taken, among other provisions, contains the following:

"Provided, the guaranty and fidelity companies organized under the provisions of this article shall have a paid up capital stock of not less than one hundred thousand dollars, and shall keep on deposit with the state treasurer money, bonds, or other securities. in an amount not less than fifty thousand dollars, said securities to be approved by the commissioner of agriculture, insurance, statistics and history (commissioner of insurance and banking), and that this amount be kept intact at all times." Rev. Stats., Articles 4928, 1121.

In addition to the foregoing, the legislative act of 1897, which became Articles 4929 to 4940, Revised Statutes of 1911, was also applicable to plaintiff in error, and may be looked to for ascertaining the purpose of the deposit and its legal status.

The Act related to both foreign and domestic insurance companies. Article 4930 expressly provided that the securities deposited with the Treasurer were to remain with him in trust to answer any default of the company upon its obligations, when established by final judgment. The Treasurer and his successors in office were required to receive and retain the deposit in trust for the purposes stated. The depositing company was given the right to collect interest, dividends, and profits from the deposit, and from time to time to withdraw the securities and substitute others of equally good character and value. The securities deposited were not to be subject to levy under writ or process of attachment. The depositing company could have the securities returned to it only upon its ceasing to transact business and filing with the Treasurer a bond equal to its whole liability in this State, if any liability existed.

Article 4935 prescribed the remedy in the event the despositing company made default on its obligations. It declared:

"Should any company of the character named or enumerated in this chapter fail or refuse to pay any loss by it incurred in this state within sixty days after its liability thereupon shall have been by suit finally determined, upon satisfactory proof, to the treasurer of

this -state, of such liability and of its non-payment, said treasurer shall, out of the deposits so made with him, as by this chapter provided, pay said loss, and, when he shall have done so, he shall, at once, certify to the commissioner of insurance and banking the fact of such default on the part of said company; whereupon said commissioner shall forthwith cancel and annul the certificate of authority of such company to do business in this state; provided, that such payment shall not operate to release the company from payment of any balance which it still may owe after such payment by the treasurer of this state has been made."

It is unnecessary to refer to other Articles by which plaintiff in error was governed. These suffice to show that the securities deposited with the State Treasurer were so deposited with him as trustee for the use and benefit of the holders of the company's obligations.

Article 4930 expressly declares:

"Said securities so deposited with said treasurer to remain with him *in trust* to answer any default", etc. "Said treasurer and his successors in office being hereby directed to receive and hereafter retain such deposit under this act *in trust* for the purposes hereof."

The Article contained a provision with reference to companies which had made deposits prior to the enactment of this law, using the following language:

"Provided, however, that whenever any such company, domestic or foreign, has been engaged in this state in the business contemplated by this act, has made deposit in this state, *in trust* or otherwise, of securities, to answer any default of such company upon any such bond, undertaking, recognizance, guaranty or stipulation, such securities so deposited shall be by the *trustee* or custodian thereof transferred and delivered to said treasurer of this.state *in trust* for the same purposes under and subject to all the rights and equities of all parties interested, and to the terms and provisions of this act; and thereupon such deposit shall remain *in trust* under and subject to the terms and provisions of this act; and, whenever such deposit has been made with a *trustee* by order of any court or other authority, it shall be the duty of the court or other authority, by order or otherwise, to direct such transfer to said treasurer; and, in case such deposit is less than the sum of fifty thousand dollars, then said company must deposit with said treasurer securities sufficient to increase said deposit to said sum of fifty thousand dollars, as required by this chapter."

It is clear from this that the statute expressly made the securities deposited a trust fund and the State Treasurer a trustee for the purposes declared by the law. Not only were the securities deposited in trust, but, as shown by the terms of Article 4935, quoted above, provision was made for the discharge of the trust by the Treasurer

of the State; that is, on default of the company, duly established, it was the duty of the Treasurer to, "out of the deposits so made with him . . . pay said loss."

The custody of the securities and the payment of losses on default were two duties of the trustee, and for the effective execution of the latter one the statute necessarily vested title in the State Treasurer, as trustee; otherwise, payment of a judgment by him out of the deposits would not pass title thereto, and would not be effective. He could not pay with the deposits unless he had title to the deposits.

The statutes contain every element essential to the creation of a trust fund, and the designation and selection of a trustee. That the effect of these statutes was to create a trust fund and make the State Treasurer trustee, is well settled by the decisions of our courts and other authorities. Richardson v. Hutchins, 68 Texas, 81, 88, 3 S. W., 276; State v. Fidelity and Deposit Co. of Maryland, 35 Texas Civ. App., 214, 80 S. W., 544, 554; Beach on Insurance, Vol. 1, § 82; Joyce on Insurance (2d Ed.), Vol. 5, § 3595; 22 Cyc., p. 1399; B. & A. Ry. Co. v. Mercantile Trust and Deposit Co., 82 Md., 535, 38 L. R. A. 97, 112, and elaborate notes; Vandiver v. Poe, 119 Md., 348, 46 L. R. A. (N. S.), 187, 189.

Mr. Beach, in his work on Insurance, Vol. 1, § 82, says:

"The effect of statutes of the States providing for the deposit by insurance companies of securities with some State official,—as with a State Treasurer, for instance,—for the protection of its policy-holders, and the act of the companies in complying with such statutes, is to create a trust fund in the hands of such official, he thereby becoming a trustee for the class of beneficiaries represented by the insured in those States."

In Joyce on Insurance (2d Ed.), Vol. 5, § 3595, it is said:

"A deposit with a state treasurer of securities as a guaranty for the payment of policies of an insurance company, whether made as a statutory requirement or voluntarily, and whether held by him in his official or in his individual capacity, creates a trust for the benefit of such policyholders in case of the insolvency of the company, to the exclusion of other claims except a paramount claim for taxes."

In the case of State v. Fidelity & Deposit Co. of Maryland, 35 Texas Civ. App., 214, 80 S. W., 544, 554, in construing the identical statutes here involved, but in reference to a foreign company, the Court of Civil Appeals held that Article 4930 created a trust fund and made the State Treasurer a trustee.

A writ of error was denied in this case, and we believe the doctrine there announced was sound, and is applicable to a domestic company, such as plaintiff in error, to the same extent that it was applied to a foreign company.

The opinion of the Court of Civil Appeals was delivered in 1904. Afterwards the Act of 1897, upon which the opinion was predicated,

was placed in the Revised Statutes of 1911 as Article 4930. These statutes were adopted by the Legislature.

It is an elementary rule of construction that where, after a statute has been construed by the highest court of the State, the Legislature re-enacts the statute, whether by the adoption of Revised Statu.es or by amendment, the act of the Legislature carries with it the construction previously placed upon the law by the court. Pearson v. West, 97 Texas, 238, 243, 77 S. W., 914; Hall v. White, 94 Texas, 452, 454, 61 S. W., 385; Johnson v. Hanscom, 90 Texas, 321, 328, 37 S. W., 601, 38 S. W. 761.

In the Fidelity and Deposit Co. Case the opinion was not by the court of last resort in the State, but it was passed upon by the Supreme Court in the refusal. of the writ of error; and while this would not make the opinion in all respects authoritative, it is sufficient to make strongly persuasive the proposition that the Legislature in the adoption of the Code of 1911 placed upon Article 4930 Revised Statutes the construction which had been placed upon it by the Court of Civil Appeals in the case referred to; nor would we feel authorized to place a different construction upon it, under the circumstances of this case, after its adoption in the Code, except for impelling and cogent reasons.

We regard the law as settled that the statutes here under examination create a trust fund and make the State Treasurer a trustee.

Since the State Treasurer was the trustee of the securities deposited with him, it was his duty to have rendered these securities for taxation for the year 1911; but, as we shall see further on, not thereafter. Revised Statutes, Article 7509, Subdivision 6, makes it the duty of the trustee to render for taxation the property held by him in such capacity. State v. Fidelity & Deposit Company of Maryland, *supra.*

The securities being personal property in the hands of the State Treasurer as trustee in his official capacity, they were taxable at Austin, his official residence. 1 Cooley on Taxation (3d Ed.), p. 660; 26 Ruling Case Law, p. 294; Welch v. City of Boston, 221 Mass., 155, Ann Cas. 1917D, p. 946 and notes; City of Augusta v. Kimball, Trustee, 91 Me., 605, 41 L. R. A., 475, 477; Trustees v. City Council of Augusta, 90 Ga., 634, 20 L. R. A., 151, and notes; Hemenway et al. Trustees, v. Inhabitants of Milton, 217 Mass., 230, L. R. A. 1915C, p. 949, and notes.

In the notes to the last cited case the Editor says: "The general rule is that personal property in the hands of the trustee is to be assessed to him at the place of his domicile." Many authorities are cited from various jurisdictions in support of this proposition, but we will content ourselves with merely referring to the notes shown on pages 950 to 959, inclusive.

In Judge Cooley's work on Taxation (3d Ed.), page 660, he says:

"In general, personal property in the hands of a trustee is to be assessed to him at the place of his domicile."

We think it plain from these authorities that, in the absence of legislation to the contrary, the securities on deposit with the Treasurer of the State in this case on January 1, 1911, had their taxable situs in Travis County, and were properly taxable there.

We are clear, however, that the securities were taxable in Travis County for still another reason. They are of a class of property capable of obtaining a business situs, and, under familiar rules, having obtained such a situs, they are there taxable, in the absence of legislation to the contrary. The securities were on deposit with the Treasurer for a business purpose. They were not there solely for safe-keeping, but for the protection of the holders of the obligations of the plaintiff in error, and responding to such judgments as might be rendered against it. The contention that they were not placed with the Treasurer voluntarily is without support. They were not seized and placed in the hands of the Treasurer by any court process, or by an act of trespass. They were placed there by plaintiff in error voluntarily in order that it might exist as a business institution. The deposit of these securities was the very foundation of plaintiff in error's business, an absolute prerequisite to its existence as a corporation. That the law required it, does not detract from the voluntary quality of the act, and emphasizes the proposition that the securities were deposited for the very highest of business purposes,—that is, to bring plaintiff in error into actual existence and shield and protect its stockholders, and the holders of its obligations. The existence of these securities in the hands of the Treasurer at Austin was a continuing business transaction of plaintiff in error and part of the very corpus of its business affairs. While plaintiff in error had a home office at Waco, and perhaps local offices elsewhere, it had its statutory trustee at Austin, the State Treasurer, each of which contributed to the creation of the business of plaintiff in error; that is, that business was the result of the correlated activities of its agents at its home and local offices, and of its trustee at Austin. The deposit at Austin performed its function actively and persistently at all times, for had it ceased to exist, plaintiff in error's business would have ceased to exist as a lawful enterprise. Revised Statutes, Articles 4928, 4930, 4931, 4932, 4939. If plaintiff in error did not advertise specially the fact of this deposit, still the very fact that it held itself out as having been incorporated under the laws of Texas, if it did do so—and we must assume that it did, since it was actively engaged in business—was within itself a pronouncement to all who sought its offices that these securities were on deposit. That these securities did have a business situs in Austin, is sustained by the authorities. State v. Fidelity & Deposit Co. of Maryland, 35 Texas Civ. App., 214, 80 S. W.,

544, 550; Guaranty Life Ins. Co. of Houston v. City of Austin, 103 Texas, 209, 190 S. W., 189.

For the two reasons hertofore stated, each of which is sufficient, we hold that the securities of plaintiff in error on deposit with the State Treasurer on January 1, 1911, were taxable in Travis County for that year. The judgment in this case being itemized or severable for the year 1911, it will be affirmed as set out in the concluding portion of this opinion.

But when we come to consider the taxes claimed for the years subsequent to 1911, that is for the years 1912 to 1916, inclusive, a different situation presents itself.

In 1909 the Legislature passed what is known as Chapter 108, Acts of the Thirty-second Legislature. This Act was incorporated in the Revised Statutes of 1911, which became effective on September 1 of that year, and were, therefore, in effect on January 1, 1912, the beginning of the taxation period of the securities involved in this section of this opinion.

Articles 4749 and 4764, which prescribe a special method of taxing insurance companies, and fix the situs for taxation of all securities deposited by insurance companies with the State Treasurer at the home office of such companies, became effective and applicable to all insurance companies when the Revised Statutes of 1911 were adopted. See the opinion of this Court in the case of American Indemnity Co. v. City of Austin, this day delivered, but not yet published. (112 Texas, 239, 246 S. W.; 1019).

Plaintiff in error is an insurance company. It was incorporated as a fidelity, bonding and surety company, and although its charter was afterwards amended, its character as an insurance corporation was not changed. Section 62, Chapter 108, Acts of the Thirty-first Legislature, which became, and is now, R. S. Article 4956, clearly classifies and recognizes fidelity and surety business as insurance business, and authorizes the incorporation of companies to transact this class of business under the insurance laws of the State. This recognition was carried further in the Revised Statutes of 1911, by the inclusion of Section 37, Article 1121, under which plaintiff in error was chartered, together with Chapter 165, Acts of 1897, regulating surety companies, in the Insurance Title of the Revised Statutes. Title 71, ''Insurance,'' of the Revised Statutes of 1911 is the title devoted to the insurance laws of the State. Chapter 13 of that Title, under the heading ''Fidelity, Guaranty and Surety Companies,'' authorizes the incorporation of and regulates the business of such companies as plaintiff in error.

Article 4955, which is in Title 71, declares that all the provisions of the laws of the State applicable to life, marine, inland, lightning, or tornado insurance companies, shall, so far as applicable, govern

and apply to all companies transacting any other kind of insurance business in this State, so far as they are not in conflict with the provisions of law made specially applicable thereto. Bonding and surety contracts by companies such as is the plaintiff in error are regarded by the courts as insurance contracts, and the companies insurance companies. American Surety Co. v. San Antonio Loan & Trust Co., 98 S. W., 387, 403; Griffin v. Zuber, 52 Texas Civ. App., 288, 113 S. W., 961, 963; 1 Joyce on Insurance (2d Ed.), §§ 339, 339a, 339d.

These various statutory provisions, in the light of the authorities cited, can lead to but one conclusion,—that plaintiff in error is to be regarded as an insurance company, governed by all insurance laws applicable to it. Being an insurance company, it follows that under the opinion this day delivered in the case of American Indemnity Company v. City of Austin, (112 Texas, 239, 246 S. W., 1019) the taxable situs of its securities on deposit with the State Treasurer after the Revised Statutes became effective in 1911 was at the home office of plaintiff in error, and not in Travis County.

From the foregoing it follows that so much of the judgment rendered in this cause as is against plaintiff in error for the taxes due on the securities on deposit with the State Treasurer on January 1, 1912, 1913, 1914, 1915, and 1916 must be reversed and rendered.

It is, therefore, ordered that so much of the judgment in this case as awards the defendant in error a recovery against plaintiff in error for the amount of taxes, interest and penalty for the year 1911 is affirmed in accordance with the terms of the original judgment; but so much of said judgment as awards the amount of taxes, interest and penalties in favor of defendant in error against plaintiff in error for the years 1912, 1913, 1914, 1915, and 1916 is reversed and here rendered in favor of plaintiff in error, the Texas Fidelity & Bonding Company.

*Affirmed in part and in part reversed and rendered.*