AMERICAN INDEMNITY CO. v. CITY OF AUSTIN. (No. 6202.)

(Court of Civil Appeals of Texas. San Antonio. April 16, 1919. Rehearing Denied May 14, 1919.)

1. TAXATION ⬦276—PLACE OF TAXATION—CASUALTY INSURANCE COMPANY—"HEALTH INSURANCE COMPANY" — "ACCIDENT INSURANCE COMPANY."

The mere fact that a casualty insurance company incorporated under Acts 32d Leg. c. 117 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4942a–4942z), was authorized by its charter to write health and accident insurance, did not make it a health or accident insurance company, within the meaning of Acts 31st Leg. c. 108, or make applicable to it any of the provisions of such act.

[Ed. Note.—For other definitions, see Words and Phrases, Accident Insurance Company.]

2. TAXATION ⬦276—PLACE OF TAXATION—CASUALTY INSURANCE.

Acts 31st Leg. c. 108, providing for the incorporation of life, health, and accident insurance companies, and the deposit of securities by such companies with the state treasurer,

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and attempting to fix the situs for taxation purposes of the property of such companies, does not apply to casualty companies.

3. TAXATION ☞253 — SECURITIES OF INSURANCE COMPANIES—HOME OFFICE AS SITUS—CONSTITUTIONALITY OF STATUTE.

Acts 31st Leg. c. 108, §§ 1, 38, providing that for the purpose of taxation the situs of all personal property belonging to life, health, and accident insurance companies shall be the home office of the owning company, is violative of Const. art. 8, § 11, so far as concerns securities which are not actually at the home office of the company, but have been deposited as required with the state treasurer at Austin in another county.

4. MUNICIPAL CORPORATIONS ☞971(3) — BACK ASSESSMENT BY CITY—CHARTER.

Under Charter of City of Austin, art. 12, § 2, subd. 24, as amended March 24, 1909 (Sp. Laws 1909, c. 90), the city had legal authority to make, in 1917, a back assessment of securities of a casualty insurance company for the years 1914, 1915, 1916.

5.. STATUTES ☞181(2) — CONSTRUCTION — INTENT—EFFECT.

When two constructions may be given a statute, one of which would lead to absurdities and defeat the legislative intent, while the other would clarify its meaning, purposes, and intent, and make the statute enforceable, such reasonable construction must be given it.

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by the City of Austin against the American Indemnity Company. From judgment for plaintiff, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, for appellant.

J. Bouldin Rector, J. W. Maxwell, and Lightfoot, Brady & Robertson, all of Austin, for appellee.

COBBS, J. Appellee filed this suit to recover taxes for the years 1914, 1915, and 1916, alleged to be due to it as a municipal corporation upon certain securities (bonds, bank certificates of deposit, and promissory notes secured by mortgage liens on land) deposited by appellant with the treasurer of the state of Texas in accordance with the provisions of article 4942e of Vernon's Sayles' Texas Civil Statutes. Trial before the court without a jury resulted in judgment in favor of appellee for sums aggregating $9,842.33 as the principal, interest, and costs on the taxes found to be due for the several years mentioned, being $1,610.37 for 1914, $3,649.40 for 1915, and $4,582.56 for 1916. The judgment provided for foreclosure of appellee's tax lien upon the securities found by the court to have been deposited with the State treasurer on the 1st

day of January of each of the years mentioned. The case was tried on an agreed statement of facts, which was adopted by the court below as his findings of fact. The court, at the request of appellant, duly filed his findings of fact and conclusions of law, which were excepted to by appellant.

The findings of fact of the trial court are substantially as follows:

It is agreed and admitted that the allegations in paragraphs A, I, and II of plaintiff's original petition are true, to the effect that the city of Austin is a municipal corporation, duly and legally incorporated by special act of the Legislature of the state of Texas, having its domicile in Travis county, and the defendant a corporation incorporated, organized, and licensed under the laws of Texas for the purpose of doing a title, fidelity, surety, and indemnity insurance business in Texas, whose main office and principal business is located in the city of Galveston, county of Galveston, state of Texas, of which Sealy Hutchings is president.

Under and by virtue of its charter of incorporation, plaintiff and its city council have, and continuously since its incorporation have had, the lawful power and authority to levy and collect annual taxes, not exceeding for all purposes, including an annual tax for current expenses, general improvement of the city and its property, and to pay the interest and 2 per cent. sinking fund annually on all bonded indebtedness of the city, and for the maintenance of the public schools 2½ per cent. of property values on all property within the limits of the city, on the 1st day of January of each year, taxable by law for state and county purposes.

For the years 1914, 1915, and 1916 the taxes were regularly levied by the city council on the property therein situated for all purposes that it was authorized by law to make such levies.

The allegations of the above-mentioned paragraphs, the substance of which is herein stated, were agreed to and admitted to be true, except as to the purpose for which defendant was incorporated, as to which a copy of the body of its charter was made a part of the agreement.

It is further agreed that defendant's home office has been continuously since its incorporation on April 19, 1913, and still is, in the city of Galveston, county of Galveston, and state of Texas.

The charter is as follows:
"State of Texas, County of Galveston.

"Know all men by these presents that we, Louis A. Adoue, Jules Block, R. P. Clark, George Sealy, Ben Dolson, Jr., H. Guldman, J. W. Hoopes, Sealy Hutchings, D. W. Kempner, F. M. Lege, Otto Letzerich, Wm. L. Moody, III, C. H. Moore, W. A. McVitie, Fred C. Pabst, John Sealy, L. A. Stein, S. Sgitcovich, H. O. Stein, and H. L. Zeigler, all resident citizens of Galveston county, Texas, being desirous of forming a corporation for the transaction of insurance business, as hereinafter set out, do hereby voluntarily associate ourselves together for the purpose of creating and corporating an insurance company under and by virtue of the laws of the state of Texas, and particularly under and by virtue of chapter 117 of the Gen-

eral Laws of the State of Texas passed by the Thirty-Second Legislature at its regular session, and we do hereby adopt and subscribe articles of incorporation as follows:

"(1) The name of this corporation shall be American Indemnity Company.

"(2) The principal office of this corporation will be established and located in the city and county of Galveston, Texas.

"(3) The amount of capital stock of this corporation shall be three hundred thousand dollars ($300,000.00), divided into three thousand (3,000) shares, of one hundred dollars ($100.00) each.

"(4) This corporation shall exist for a term of one hundred years.

"(5) The object and purposes for which this corporation is organized are as follows:

"(a) To insure any person against bodily injury, disablement of death resulting from accident, and against disablement resulting from disease.

"(b) To insure against loss or damage resulting from accident to or injury sustained by an employé or other person for which accident or injury the assured is liable.

"(c) To insure against loss or damage by burglary, theft, or housebreaking.

"(d) To insure glass against breakage.

"(e) To insure against loss from injury or property which results accidentally from steam boilers, elevators, electrical devices, engines, and all machinery and appliances used in connection therewith, or operated thereby; and to boilers, elevators, electrical devices, engines, machinery, and appliances.

"(f) To insure against loss or damages by water to any goods or premises arising from the breakage or leakage of sprinklers and water pipes.

"(g) To insure against loss resulting from accidental damage to automobiles or caused accidentally by automobiles.

"(h) To insure against loss or damage resulting from accident to or injury suffered by any person for which loss and damage the insured is liable, except employers' liability insurance as authorized under subdivision (b) hereof.

"(i) To insure persons, associations, or corporations against loss or damage by reason of giving or extending of credit.

"(j) To insure against loss or damage on account of circumstances upon or defects in the title to real estate, and against loss by reason of the nonpayment of the principal or interest of bonds, mortgages, or other evidences of indebtedness.

"(k) To insure against the following specified casualty or insurance risks, all of which may be lawfully made the subject of insurance, and the formation of a corporation for issuing against which is not otherwise provided for by said chapter 117, to wit: To act as surety and guarantor of the fidelity of employés, trustees, executors, administrators, guardians, or other appointed to, or assuming the performance of, any trust, public or private, under appointment by any court or tribunal, or under contract between private individuals or corporations; also on any bond or bonds that may be required to be filed in any judicial proceeding; also to guarantee any contract or undertaking between individuals, or between private corporations, or between individuals or private corporations and any state, the United States, municipal corporations or counties, or between private corporations and individuals; to transact all kinds of fidelity, surety, and liability insurance business.

"In testimony whereof we have hereunto subscribed our names this 10th day of April, 1913."

II. It is agreed and admitted that the allegations in paragraph III. of plaintiff's original petition are true, except that defendant does not admit that the bonds, notes, and other securities mentioned in said paragraph were deposited with the state treasurer in furtherance of its business ends or purposes, or that defendant advertised the fact of deposit of such securities, or printed a copy of the treasurer's receipt on the policies issued by it. It is further agreed and admitted that said deposits were made under the provisions of articles 4942e and 4930, Vernon's Sayles' Revised Statutes.

III. It is agreed and admitted that on the 1st day of January, 1914, defendant had on deposit with the treasurer of the state of Texas, and in the state treasury in the city of Austin, securities of the reasonable cash value of $100,000.00, consisting of—

| | |
|---|---|
| Galveston Sea Wall Bonds Nos. 101–118 | $ 9,000 00 |
| Galveston Sewerage Bonds.... | 41,000 00 |
| Galveston Sea Wall and Breakwater Bonds.............. | 50,000 00 |

—the same having been deposited under articles 4942e and 4930 of Vernon's Sayles' Revised Statutes, and that said bonds were interest bearing, and that a portion of the assets of defendant was invested in them.

IV. It is agreed and admitted that on the 1st days of January of each of the years 1915 and 1916 defendant owned and had on deposit with the treasurer of the state of Texas, and in the state treasury in the city of Austin, the securities consisting of bonds and promissory notes described in paragraph V and VI of plaintiff's petition, the same having been deposited under the articles of the statutes mentioned in the preceding paragraph, except that the additional deposits in excess of the first $100,-000.00 were made under said articles, and under the provisions of article 4942e, in order to allow defendant to write all the kinds of business authorized by its charter in the state of Michigan. It is further admitted and agreed that at the times mentioned said bonds and notes were of the reasonable cash value alleged in said paragraphs V and VI of said petition, and that they were interest-bearing securities, and that a portion of the assets of defendant was invested in them.

V. It is agreed and admitted that the investments of defendant mentioned in paragraphs IV, V, and VI of plaintiff's original petition were not made in Travis county; that none of the payors of said bonds or notes ever resided in Travis county; and that none of the property on which liens existed to secure their payment was situated in Travis county.

VI. It is agreed and admitted that the allegations contained in paragraphs VII, IX, X, and XI of said petition are correct, except that the defendant does not admit that said securities deposited with the state treasurer in the manner hereinabove stated were subject to taxation for said years, or any of them, within or by the city of Austin; and while defendant ad-

mits that said property was actually assessed by plaintiff as alleged, yet defendant does not admit that said notes were lawfully assessable for taxes in or by the city of Austin for said years or any of them. Nor does defendant admit that said securities were deposited by defendant with the state treasurer for valuable business purposes and reasons, except in so far as it was permitted or required to deposit them under the provisions of the statutes above mentioned. And defendant does not admit the correctness of the amount of assessment mentioned in paragraph IX of said petition.

VII. It is further admitted and agreed that the allegations in paragraphs XII to XVII, inclusive, of plaintiffs petition are true.

VIII. It is agreed and admitted that the amounts of the taxes for the years 1914, 1915, and 1916 are correctly shown in paragraphs XVIII to XX, inclusive, of said petition, except that the amount shown in paragraph XVIII should be reduced to $1,466.67. It is not admitted that the penalties stated in connection with such taxes are collectable, nor that the taxes claimed are legally assessable by plaintiff, nor that defendant is liable for the same.

IX. It is expressly understood that the defendant does not in making this agreement, nor by anything herein contained, agree or admit that the taxable situs of said securities was in Austin, Travis county, Texas, and does not agree or admit that the same were lawfully subject to taxation in Austin, Travis county, Texas.

X. It is agreed and admitted that the defendant rendered its assets for taxation in the city and county of Galveston, Texas, and paid all taxes, municipal, state, and county, levied or assessed against said property by said city and county. It is further agreed that on January 1, 1914, the amount of defendant's reserve was $71,090.13; on January 1, 1915, said reserve was $161,197.74; and on January 1, 1916, said reserve was $322,553.86.

XI. It is agreed and admitted that in the attempted assessment of said securities for taxes for the years 1914, 1915, and 1916 by the city of Austin, as alleged in said petition, the taxing officers of said city of Austin did not assess said property in accordance with the provisions of article 4764, Revised Civil Statutes of 1911, but attempted to assess the same in accordance with its charter and ordinances, as personal property having its situs in the city of Austin, independently of that article, and without taking into account or deducting the real estate and amount of the legal reserve of defendant.

XII. It is further agreed that any of the provisions of the Austin city charter to be read from the Session Laws, or Gammel's Reprint, shall be considered in evidence without the necessity of either party specially pleading or proving same.

XIII. It is agreed and admitted that the following allegations in paragraph VII of plaintiff's original petition are true: "That all of said personal property and securities, promissory notes, bonds, and credits, hereinbefore described, are the same property described in Exhibits A, B, and C, respectively hereto attached, and which are here referred to and made a part hereof, and which were on the 1st day of Jan-

uary of each of said respective years, as aforesaid, on deposit in the state treasury, and with the state treasurer of this state, and in the said city of Austin, Texas." Except it is not admitted that there were any bonds, notes, or credits owned by defendant on deposit except as hereinabove specifically admitted.

XIV. It is further admitted that said bonds and notes were so placed and deposited by defendant with the state treasurer, and in the state treasury of this state, under and in accordance with the provisions of and for the purposes named in articles 4942e and 4030, Vernon's Sayles' Statutes.

XV. Nothing herein contained shall be construed as an admission by defendant that it is legally liable for any interest or penalty mentioned in paragraph XII, or any other paragraph of said petition.

The following provisions in the charter of the city of Austin, Travis county, Tex., were read in evidence, to wit: Sections 2, 3, 5, 7; and following sections under article XV, to wit, sections 2, 10, 11, 19; and under charter approved March 24, 1909, following subdivisions to section 2 of article 12, to wit, section 2 (1), (2), (3), (9), (16), (17), (24), (25), (26), (27), (a), (b), (c), (28). Said provisions are not copied herein because they would make this opinion unnecessarily long, besides section 19, above, made it a public act to be read in evidence without further proof.

The first, second, and third assignments, of error are presented together and adopted as propositions. They are as follows:

"(1) The court erred in concluding as a matter of law that the provisions of chapter 108 of the Acts of the Regular Session of the Thirty-First Legislature providing that the situs for the purposes of taxation of all personal property of life, health, and accident insurance companies is at the home office of the company, do not apply to this defendant.

"(2) The court erred in concluding as a matter of law that this defendant was not entitled to the benefits of section 38 of chapter 108 of the General Laws of the Regular Session of the Thirty-First Legislature, the same being article 4749 of the Revised Statutes of 1911, and in this connection in holding that the situs of the securities described in the court's findings of fact for the purpose of municipal taxation was not at the home office of defendant, to wit, in Galveston County, Texas.

"(3) The court erred in holding that defendant was not a health or accident insurance company within the meaning of chapter 108 of the Acts of the Regular Session of the Thirty-First Legislature, and as such entitled to the benefit of the provisions of section 38 of said act with regard to the situs of the personal property described in its findings of fact for purposes of taxation being at the home office of defendant, namely, in Galveston county, Texas."

The findings of fact and conclusions of law cover every phase of the question.

The first question here is to ascertain the situs of the property for the purposes of taxation. Sections 38 and 1 of chapter No. .

108 of Acts 1909 provide for any life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident, insurance companies, organized under the laws of this state, may at its option deposit with the treasurer securities equal to amount of its capital stock, and may at its option withdraw the same or any part thereof, first having deposited in the treasury in lieu thereof other securities equal in value to those withdrawn, and requires said deposit be "maintained as long as said company shall have outstanding any liability to its policy holders. For the purpose of state, county, and municipal taxation the situs of all personal property belonging to such companies shall be at the home office of such company."

Section 1 goes very much in detail to define the purposes and terms of the different corporations coming within its provisions.

The home office of appellant is Galveston, and its purpose is to "insure any person against bodily injury, disablement, or death resulting from accident, and against disablement resulting from disease."

As defined in section 1 of the Act of 1909, "An accident insurance company shall be deemed to be a corporation doing business under any charter involving the payment of money or other thing of value, conditioned upon the injury, disablement, or death of persons resulting from traveling or general accidents by land or water," and further says: "'Company', * * * as used herein, includes all corporations engaged as principals in the business of life, accident, or health insurance."

The caption of the act shows the purpose thereof "to fix situs of personal property of such companies for purposes of taxation."

If the situs of the property is in Austin, Travis county, then such property was taxable there, and all things done legally to create the lien, unless it failed to assess as the law provides for such assessments.

[1] It is contended, by appellee, appellant was incorporated under chapter 117, Acts 32d Leg. 1911 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 4942a–4942z), and therein named and designated a "Casualty Insurance Company," and authorized to write various classes of insurance, among which was a class to a limited extent pertaining to health and accident, and from that act appellant derived its powers and authority, and was subject only to the provisions of that act, and under the requirements of which it deposited the securities in controversy; and the mere fact that it was authorized by its charter to write insurance pertaining to health and accident does not make it a health or accident insurance company within the meaning of chapter 108, Acts 31st Leg. 1909, or make applicable to appellant any of the provisions of that act. We agree with the contention of appellee.

Appellee further contends as a casualty company under the provisions of chapter 117, Acts 32d Leg. 1911, and making the deposit of securities under the provisions of that act it is not subject to the provisions of section 38 or any other section of chapter 108, Acts 31st Leg. 1909, which last-named act provides for the incorporation of life, health, and accident insurance companies, the deposit of securities by such companies, and attempting to fix the situs for taxation purposes of the property of such life, health, and accident insurance companies.

The contention of appellant is if appellant is a health or accident, or health and accident, company, as those terms are expressly defined by section 1 of the act of 1909, it is entitled, under the provisions of section 38, to immunity from taxation on its personal property by the city of Austin, and can only be taxed on such property in the city of Galveston.

[2] This act does not apply to casualty companies, for section 37 thereof provides it "shall be unlawful for any life insurance company, accident insurance company, life and accident * * * company to take any kind of risks or issue any policies of insurance except those of life, accident, or health," etc.

Section 26 of chapter 117 of the Acts (Vernon's Sayles' Ann. Civ. St. 1914, art. 4942z), approved March 27, 1911, reads:

"This act is cumulative as to insurance legislation in this state, and as to the mode and manner of organizing and doing insurance business in this state, and shall not be construed to repeal any law now in force in this state."

[3] If, however, it were conceded that appellant, a casualty insurance company, is affected by the sentence in section 38 of the act of 1909 relating to situs of personal property of certain insurance companies for purposes of taxation, we would be confronted with the further contention made by appellee that said provision is unconstitutional.

The appellee contends that by virtue of section 11 of article 8 of the Constitution these securities are properly taxable in Austin, Travis county, being the place where the property was situated on the 1st of January of those years the assessments were made.

Now, let us see what the Constitution says about taxes and the situs of the property as relating to property per se and as applicable to different subjects of taxation, to ascertain the constitutional limitation, if any, placed upon the officials of municipal and other authorities or boards created for that purpose as to the situs for assessing and paying taxes, and to thus ascertain the true intent.

Section 8 of article 8 of the Constitution provides all property of railroad companies

*shall be assessed* and the taxes collected *in the several counties in which said property is situated*, including so much of the road bed and fixtures as shall be in each county. The rolling stock may be assessed in gross in the county where the principal office of the company is located. (Italics ours.)

Section 5 of article 8 of the Constitution provides:

"All property of railroad companies, of *whatever description*, lying or being *within the limits of any city or incorporated town* within this state, * * * the authorities of the *city or town, within which it lies, shall have power to require its rendition*, and collect the usual municipal tax thereon, *as on other property lying within said municipality.*" (Italics ours.)

Although section 8 of article 8 of the Constitution provides that railroad property "shall be *assessed*, and the *taxes collected in the several counties in which said property is situated*. * * * The rolling stock may be assessed in gross in the county where the principal office of the company is located." (Italics ours.)

The court has sustained the validity of another method of taxing what was called "intangible assets" by agencies created by the state, outside of the counties where the railroad had its "roadbed and fixtures," and outside of "the county where the principal office of the company is located." But this was not physical and tangible property, such as promissory notes' and other tangible securities the law requires these companies to place with the state treasurer as a condition precedent to doing business.

The court said such agencies, so called, are "not in contravention of this section *requiring railroad property to be assessed in the county where it is situated.*" M., K. & T. Ry. v. Shannon, 100 Tex. 389, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Lively v. M., K. & T. Ry., 102 Tex. 557, 120 S. W. 852. (Italics ours.)

Section 11 of article 8 of the Constitution provides:

"*All property*, whether owned by persons or corporations, *shall be assessed* for taxation, and the *taxes paid in the county where situated.*" (Italics ours.)

In Galveston v. Guffey Pet. Co., 51 Tex. Civ. App. 645, 113 S. W. 587, the court says:

"The Legislature may, in certain instances, give to property an artificial situs for the purposes of taxation; but when the property is physical in character, or of a nature that can acquire an actual situs, it must under, our Constitution, be taxed in the county where actually situated or located."

In the case of State v. Higgins Oil Fuel Co., 116 S. W. 618, this court so held and followed above case.

It seems our Constitution required personal property to be taxed and pay its taxes

in the county where situated; but appellants say the Legislature was not prohibited by any provision of the Constitution from fixing the situs of the described property in another county for taxation than where it was found on January the 1st of each year, and say by the provisions of section 38 and 1 of chapter No. 108 of Acts of 1909, which provides: "* * * For the purpose of state, county, and municipal taxation the situs of all personal property belonging to such companies shall be at the home office of such company." It must not be understood that we hold this law entirely void because of the constitutional provision, because it violates no provision of the Constitution in respect to assessing property wholly in the county of the home office. But, in so far as the home office is in a different county from where the property is situated, and assessed in another county, any attempt to deny the right of such county where property is situated to secure its taxes by setting up any right under the so-called situs act is repugnant to the Constitution. That is what we mean to say when we say the act is unconstitutional.

These securities were by statutory requirement placed in the hands of the state treasurer, and they could not do business otherwise. But that makes no difference whether voluntarily or against their will placed and kept there.

The appellant contends that the decision in the Guaranty Case, 108 Tex. 209, 190 S. W. 189, by Chief Justice Phillips, was made under totally different conditions from those under which appellant's deposits were made, and has no application to appellant and nothing to do with this case, because the Guaranty was not forced by law to make the deposit, but made under section 38 of the Act of 1909, it availed itself of all the advantages that were incident to that act in advertising, etc., and purely optional.

To decide the Guaranty Case it was not necessary to say more than was said to fix the situs in Austin, Travis county; while the Supreme Court did not have to pass on the constitutionality of the so-called situs law as in conflict with the provision of section 11, art. 8, of the Constitution, but discussed the situs of personal property as it related to the proper county where personal property was taxable.

We regard this case settled by the Guaranty Case, and we must therefore hold that so much of all laws that provide "for the purpose of state, county and municipal taxation the situs of all personal property belonging to such companies shall be at the home office of such company," if the property attempted to be assessed is in another county, to be and is in conflict with the Constitution that requires such property to "be assessed for taxation and the taxes paid in the county where situated."

It is not necessary to pass upon the demand of appellant that its property be assessed in accordance with the provision of article 4764, because such error, if any, must be regarded as waived, or of no importance to the decision of this case, on account of the agreement of the parties, which was duly assessed in Austin, where the property was found in accordance with the provisions of the Austin charter. At any rate, the agreement furnished itself a basis for the trial court to render a judgment, and we believe in that respect substantial justice has been done. If the city is entitled to the amount of taxes sued for and conceded by defendants, it is immaterial here the process by which that ascertainment was made, if the results agreed upon are substantially accurate, and made under the lawful provisions of Austin's charter.

[4] Appellant by his sixth assignment challenges the taxes for the years 1914, 1915, and 1916 because the assessment of said taxes by the plaintiff was made during 1917, because the plaintiff had no authority under the law to make such a back assessment for previous years. We overrule this contention because we believe it had the right, as will be seen from what we have said.

Appellant contends that the provision, subdivision 24 of section 2, article 12, of the Charter of the city of Austin, as amended March 24, 1909 (Special Acts 1909, p. 643), to the effect:

"If the city assessor and collector shall discover any property, real or personal, which was subject to taxation for any year heretofore, and which from any cause has escaped taxation, he shall require the same to be listed and assessed according to the rate of taxation levied for the year or years it was omitted, and enter the same as a supplement to his next roll, stating the year, and the taxes thereon shall be collected in the same manner as other assessments."

Appellant has made a very plausible and interesting argument to convince us that the word "heretofore," as used in the charter, "results in the inability of the city to collect taxes on unassessed property for former years when the omission occurred subsequently to the enactment of the statute, and we must at once see the situation, with the answer that thus the law is written."

The appellee meets that contention by saying "heretofore" may be read as "theretofore" or left out.

[5] A familiar rule of construction is when two constructions may be given to a statute, one of which would lead to absurdities and defeat the legislative intent, and the other would clarify its meaning, purposes, and intent, and make the same enforceable, such reasonable construction must be given it.

Now, what was the purpose of that provision? It was, speaking in the past tense, "to *discover any property* * * * which *was subject to taxation for any year* * * * and which from any cause *has escaped taxation*, he [the city assessor and collector] shall require the same to be *listed* and assessed according to the rate of taxation levied for the *year or years it was omitted*, and *enter* the same as a supplemental to such last roll, *stating the year*, and *the taxes thereon* shall be collected in the same manner as other assessments." We use the italics to call attention to the fact that it is the escaped taxes that are sought to be gathered, and by dropping the uselessly used word, "heretofore," from that provision, we have clearly the legislative meaning. We would not give the meaning to the word "heretofore," used, to have any greater force than that it was used to signify that it was the purpose and meaning of the provision itself to assess property that escaped taxation and tax it. We overrule this assignment.

We have considered all the assignments and all the material issues and questions raised, and, believing there is no reversible error committed, they are severally overruled.

In reaching this decision we have been much aided by the very able and interesting oral arguments delivered and the able briefs of all the attorneys filed herein.

The judgment of the court is affirmed.