## TEXAS LAND & CATTLE CO. v. CITY OF FORT WORTH.

### No. 12976.

Court of Civil Appeals of Texas. Fort Worth.

May 4, 1934.

Rehearing Denied June 1, 1934.

Thorpe A. Andrews, Slay & Simon, and Lightfoot & Robertson, all of Fort Worth, for appellant.

R. E. Rouer, J. M. Floyd, R. B. Young, Jr., and Wm. H. Gilmartin, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

The Texas Land & Cattle Company and Tina Brooker, temporary administratrix of the estate of J. N. Brooker, deceased, have prosecuted this appeal from a judgment in favor of the city of Fort Worth for taxes assessed on certain promissory notes as hereinafter noted.

The case was tried without a jury and findings of fact and conclusions of law by the trial judge appearing in the record disclose the issues of fact and law which, stated in a narrative form, are as follows:

"1. The defendant, Texas Land & Cattle Company, is a private corporation chartered under the laws of the State of Delaware in the year 1926, with its charter stating that the purposes of the company are to conduct and engage in the ranching business and to lend money on land, and naming Wilmington, Delaware, as its home office.

"2. The stock of the company consists of 2,000 shares, 1980 shares owned by J. N. Brooker, who was president and general manager of the company, 10 shares owned by Tina Brooker, a niece of J. N. Brooker, who was secretary and treasurer, and 10 shares owned by Alice Brooker, a sister of J. N. Brooker; all of these named persons were the only directors and stockholders of the company and all of them resided in one family on the outskirts of the City of Fort Worth, in the County of Tarrant, State of Texas. Continuously from the time the Texas Land & Cattle Company was organized, its business was transacted in the office of its president, J. N. Brooker, in the City of Fort Worth, Texas. Neither J. N. Brooker nor Tina Brooker, the active managers of the business of the company, were ever in the City of Wilmington, Delaware, and no loans of any kind or character were ever made at the home office of the company.

"3. The Texas Land & Cattle Company was engaged in the business of lending money in the City of Fort Worth. All of the details of making the loans were transacted through the office of its president and agent, J. N. Brooker, in the City of Fort Worth, Texas, and evidenced by promissory notes made payable in the City of Fort Worth. The money paid to the borrower was by check on some Fort Worth Bank either signed by Brooker individually or by the company which maintained an account in said city. Payments of interest or principal on the loans were made at the office of the local agent, J. N. Brooker, or at some local bank. The money obtained from the loans was deposited in some Fort Worth bank and reinvested as above detailed, said money never being sent at any time and in any amount to the home office of the company at Wilmington, Delaware. All of the business of the corporation consisted in the lending of money in Fort Worth by its local agent as above detailed and in dealing in securities by said local agent, and the only acts of any agent in Wilmington, Delaware, were those performed by the Corporation Service Company, and these consisted of the original incorporation of the company, the payment of the company's annual franchise tax and the receipt and temporary detention of the notes in a lock box in Wilmington, Delaware. Said notes were on occasions sent from time to time to Wilmington, Delaware, Kansas City, Missouri, or Oklahoma City, Oklahoma, and there temporarily deposited in a lock box. Said temporary transfer of notes from place to place was not necessary in the conduct of the company's business and it constituted no part of the dealings of the com-

pany, which were exclusively handled in the City of Fort Worth. The notes and credits in question were used and employed in Fort Worth, Texas, in the furtherance of the business in which the Texas Land & Cattle Company was engaged, and the business of the company, to wit, the lending of money, was not furthered in any way by the retention of the notes in any jurisdiction other than the City of Fort Worth, as the execution, delivery, recording, application of credits, transfers and release of said notes took place wholly within the corporate limits of the City of Fort Worth. The notes in question were regularly, habitually and continuously used in Fort Worth in the company's business, except when sent out of the jurisdiction for deposit and safekeeping only, but were returned to the City of Fort Worth and to the office of the company, or one of the local banks when it became necessary to employ them in the routine business of the company.

"4. During all of the times described in plaintiff's petition, J. N. Brooker owned all of the 2000 shares of stock in the Texas Land & Cattle Company with the exception of 20 qualifying shares held by a niece and sister in his household. The organization was a one-man corporation. It was organized and its affairs were operated as a corporation for the sole and only purpose of avoiding and evading the payment of taxes due and payable by the defendant in the City of Fort Worth, Texas. The corporation was a mere fiction for the purpose of establishing the domicile of the defendant in Wilmington, Delaware. None of the directors or stockholders of the company were ever in the City of Wilmington, Delaware. All of its business was conducted in the office of its president in the City of Fort Worth, Texas. The real office and domicile of the corporation was in the City of Fort Worth, Texas.

"5. Ad valorem taxes for the years 1928, 1929, 1930 and 1931 were regularly and duly assessed by the City of Fort Worth against the notes of said company described in plaintiff's first amended original petition, as shown by the certified copies of the delinquent tax rolls of said city for said years in the following amounts for the following years: (Here follows a list of the promissory notes and the years for which the taxes were assessed on each, their rate of taxation, and the aggregate of the taxes assessed being $17,613.01.)

"6. No taxes of any kind have been paid on said notes for any of the years described in plaintiff's petition.

"7. In May of 1931, all of said notes were transferred and assigned by said company to J. N. Brooker, with full knowledge on the part of the said Brooker of all of the above facts.

"8. The plaintiff City of Fort Worth is a municipal corporation with more than 100,000 inhabitants. It was duly and regularly incorporated as a 'home rule' city under and by virtue of the laws and Constitution of the State of Texas on the 11th day of December, A. D. 1924, the provisions of which Charter the courts take judicial notice of.

#### "Conclusions of Law.

"1. The property of the defendant Texas Land & Cattle Company has been legally assessed for taxation by the plaintiff City of Fort Worth.

"2. The actual situs for taxation purposes of the promissory notes belonging to the defendant Texas Land & Cattle Company, and those that it has assigned to its president, J. N. Brooker, was the City of Fort Worth, Texas.

"3. The defendant, Texas Land & Cattle Company, a corporation, is indebted to the plaintiff, City of Fort Worth, in the sum of $17,613.01, being the taxes and penalties due on the defendant's property, together with costs of suit and foreclosure of its lien upon the promissory notes described in plaintiff's petition."

Judgment was rendered in accordance with those conclusions.

■ It is a general rule that the situs of personal property, both tangible and intangible for purposes of taxation, is the domicile of the owner. That rule is based upon a fiction, to the end that the owner may not escape the expenses of the government by virtue of whose laws his rights in such property are protected.

The defendant in the trial court, appellant here, has invoked that rule, which is the sole basis of its resistance to the demand of the city of Fort Worth, plaintiff, for the taxes awarded in the trial court.

■ But there is an exception to the general rule that, if property owned by a citizen of one state or a corporation having its domicile therein has acquired such a situs in another state as would vest in that sovereignty jurisdiction over such property for the purpose of taxation, then it is subject to taxation under the laws of that state; and the controlling question here is whether or not

the judgment of the trial court can be sustained under that rule.

Article 8, § 11, of the Constitution of Texas reads as follows: "All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated, but the Legislature may, by a two-thirds vote, authorize the payment of taxes of non-residents of counties to be made at the office of the Comptroller of Public Accounts. And all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer."

The Legislature of the state has passed statutes for the collection of taxes for state and county purposes. Article 7145 of the statutes requires a rendition and listing of all property, real, personal, and mixed, except such as is expressly exempted from taxation. Article 7147 provides that personal property for the purpose of taxation shall be construed to include all goods, chattels, and effects and all moneys, credits, bonds, and other evidences of debt owned by citizens of this state, whether the same be in or out of the state. Article 7153 reads as follows: "All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

The city of Fort Worth operates under a special charter, and section 4 of chapter 25 reads: "The City Council shall have power to levy for general purposes an annual ad valorem tax on all real, personal and mixed property within the territorial limits of the City of Fort Worth, not exempt from taxation by the Constitution and laws of the State of Texas, based upon the fair cash value thereof, to the extent of the constitutional limit now permitted by the Constitution of the State of Texas to cities of over five thousand population, the same being Two Dollars and Fifty Cents ($2.50) on each one hundred dollars of valuation, and which said tax shall embrace all taxes for municipal purposes inclusive of the school tax that may be levied by the Board of Trustees of the Fort Worth Independent School District, as provided in this Charter. The meaning of the term 'real property,' as used in this Chapter shall be construed to mean lots, lands, and all buildings or machinery and structures of every kind located upon or affixed to the same; and the meaning of the term 'personal property,' as used in this Chapter, shall be construed to include all household furniture, money, goods, chattels and capital, and all franchises subject to taxation under this Chapter of the Charter, all stocks of corporations, moneyed or otherwise, and generally all property which is not real, including all buildings and improvements, machinery and fixtures of every kind upon lots and lands not owned by the owner of the said improvements."

In Jesse French Piano & Organ Co. v. City of Dallas, 61 S. W. 942, the Court of Civil Appeals held that certain promissory notes owned by the corporation having its domicile in the city of St. Louis were subject to taxation by the city of Dallas by reason of the fact that it had acquired a fixed situs in the city of Dallas; and a writ of error to that decision was refused by our Supreme Court. In the opinion in that case there is an extended discussion of the authorities bearing upon the question. Among the decisions cited with approval are Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701; City of New Orleans v. Stemple, 20 S. Ct. 110, 175 U. S. 309, 44 L. Ed. 174.

In City of New Orleans v. Stemple, 175 U. S. 309, 20 S. Ct. 110, 113, 44 L. Ed. 174, opinion by Justice Brewer, it was held, as stated in the syllabus, that certain moneys and notes belonging to citizens residing in the state of New York, but held, by their agents in the city of New Orleans, acquired such a situs in the city as would render them subject to taxation by that city. We quote the following from that opinion:

"If we look to the decisions of other states we find the frequent ruling that when an indebtedness has taken a concrete form and become evidenced by note, bill, mortgage, or other written instrument, and that written instrument evidencing the indebtedness is left within the state in the hands of an agent of the nonresident owner, to be by him used for the purposes of collection and deposit or reinvestment within the state, its taxable situs is in the state. See Catlin v. Hull, 21 Vt. 152, in which the rule was thus announced (pages 159, 161):

" 'It is undoubtedly true that, by the generally acknowledged principles of public law, personal chattels follow the person of the owner, and that, upon his death, they are to be distributed according to the law of his domicil; and, in general, any conveyance of

chattels, good by the law of his own domicil, will be good elsewhere. But this rule is merely a legal fiction, adopted from considerations of general convenience and policy, for the benefit of commerce and to enable persons to dispose of their property, at their decease, agreeably to their wishes, without their being embarrassed by their want of knowledge in relation to the laws of the country where the same is situated. But even this doctrine is to be received and understood with this limitation, that there is no positive law of the country, where the property is in fact, which contravenes the law of his domicil; for if there is, the law of the owner's domicil must yield to the law of the state where the property is in fact situate.' * * *

" 'We are not only satisfied that this method of taxation is well founded in principle and upon authority, but we think it entirely just and equitable, that, if persons residing abroad bring their property and invest it in this state, for the purpose of deriving profit from its use and employment here, and thus avail themselves of the benefits and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government which thus protects it.'

"In Goldgart v. People ex rel. Goar, 106 Ill. 25, 28, the court said:

" 'If the owner is absent, but the credits are in fact here, in the hands of an agent, for renewal or collection, with the view of reloaning the money by the agent as a permanent business, they have a situs here for the purpose of taxation, and there is jurisdiction over the thing.'

"In Wilcox v. Ellis, 14 Kan. 588, 19 Am. Rep. 107, the power of the state to tax a citizen and resident of Kansas, on money due him in Illinois, evidenced by a note, which was left in Illinois for collection, was denied, the court saying (603 [of 14 Kan.]), after referring to the maxim Mobilia sequuntur personam:

" 'This maxim is at most only a legal fiction; and Blackstone, speaking of legal fictions, says, "This maxim is invariably observed, that no fiction shall extend to work an injury, its proper operation being to prevent a mischief or remedy an inconvenience that might result from the general rule of law." 3 Bl. Com. 43. Now as the state of Illinois, and not Kansas, must furnish the plaintiff with all the remedies that he may have for the enforcement of all his rights connected with said notes, debts, etc., it would seem more just, if said debt is to be taxed at all, that the state of Illinois, and not Kansas, should tax it, and that we should not resort to legal fictions to give the state of Kansas the right to tax it.' "

Numerous other decisions of different states are then cited and quoted from, announcing that doctrine and the reasoning therefor.

In Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701, the following is said in the syllabus: "Investments by a nonresident of the state are subject to taxation under the laws of the state, when made by a resident agent who is employed to invest and reinvest moneys, at whose office the loans are made payable, and who retains the mortgages securing them, and to whom the notes taken for the loans are returned from time to time whenever required for the purpose of renewal, collection, or foreclosure of securities, notwithstanding the fact that the notes are sent out of the state to the principal and the agent has no authority to execute satisfactions of mortgages."

It was there held that certain intangible assets, such as notes owned by Sophie M. Bristol, a resident of the state of New York at the time of her death, were subject to taxation by Washington county, Minn., where she conducted a business of lending money through her agents, who resided in that county. In the opinion by Chief Justice Fuller, the decision of the Supreme Court of Minnesota to a like effect in a companion case (Washington County v. Jefferson, 35 Minn. 215, 28 N. W. 256) was cited and quoted from, and the following is an excerpt from the quotation: " 'For many purposes the domicil of the owner is deemed the situs of his personal property. This, however, is only a fiction, from motives of convenience, and is not of universal application, but yields to the actual situs of the property when justice requires that it should. It is not allowed to be controlling in matters of taxation. Thus, corporeal personal property is conceded to be taxable at the place where it is actually situated. A credit, which cannot be regarded as situated in a place merely because the debtor resides there, must usually be considered as having its situs where it is owned,—at the domicil of the creditor. The creditor, however, may gave it a business situs elsewhere; as where he places it in the hands of an agent for collection or renewal, with a view to reloaning the money and keeping it invested as a permanent business.' After citing Catlin v. Hull, 21 Vt. 152; People ex rel. Jefferson v.

Smith, 88 N. Y. 576; Wilcox v. Ellis, 14 Kan. 588, 19 Am. Rep. 107; Tazewell County Sup'rs v. Davenport, 40 Ill. 197, and many other cases, the opinion continued thus: 'The obligation to pay taxes on property for the support of the government arises from the fact that it is under the protection of the government. Now, here was property within this state, not for a mere temporary purpose, but as permanently as though the owner resided here. It was employed here as a business by one who exercised over it the same control and management as over his own property, except that he did it in the name of an absent principal. It was exclusively under the protection of the laws of this state. It had to rely on those laws for the force and validity of the contracts on the loans, and the preservation and enforcement of the securities. The laws of New York never operated on it.' "

The opinion in New Orleans v. Stemple, supra, was also cited with approval and quoted from; also the following from Savings & Loan Soc. v. Multnomah County, 169 U. S. 421, 18 S. Ct. 392, 42 L. Ed. 803: "The authority of every state to tax all property, real and personal, within its jurisdiction, is unquestioned. McCulloch v. Maryland, 4 Wheat. 316, 429, 4 L. Ed. 579, 607. Personal property, as this court has declared again and again, may be taxed, either at the domicil of its owner, or at the place where the property is situated, even if the owner is neither a citizen nor a resident of the state which imposes the tax. Tappan v. Merchants' Nat. Bank, 19 Wall. 490, 499, 22 L. Ed. 189, 193; State Railroad Tax Cases, 92 U. S. 575, 607, sub nom. Taylor v. Secor, 23 L. Ed. 663, 671; Coe v. Errol, 116 U. S. 517, 524, 29 L. Ed. 715, 717, 6 S. Ct. 475; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 22, 27, 35 L. Ed. 613, 616, 618, 3 Inters. Com. Rep. 595, 11 S. Ct. 876."

And in Chief Justice Fuller's opinion the following was added: "Persons are not permitted to avail themselves for their own benefit of the laws of a state in the conduct of business within its limits, and then to escape their due contribution to the public needs through action of this sort, whether taken for convenience or by design."

In Farmers' Loan & Trust Co. v. State of Minnesota, 280 U. S. 204, 50 S. Ct. 98, 101, 74 L. Ed. 371, 65 A. L. R. 1000, it was held that bonds issued by the cities of Minneapolis and St. Paul and owned by Mr. Taylor, who resided in the state of New York, where he died, were not subject to a succession tax in the state of Minnesota, as well as in the state of New York, overruling a prior decision of the same court in Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. Ed. 439, in which it was held that such a tax could be assessed both at the domicile of the owner in one state and also in another state where the bonds were held. But in the opinion in the Farmers' Loan & Trust Co. Case the following was said: "New Orleans v. Stemple, 175 U. S. 309, 20 S. Ct. 110, 44 L. Ed. 174; Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701; Liverpool & L. & G. Ins. Co. v. Board of Assessors, 221 U. S. 346, 31 S. Ct. 550, 55 L. Ed. 762, L. R. A. 1915C, 903, recognize the principle that choses in action may acquire a situs for taxation other than at the domicile of their owner, if they have become integral parts of some local business. The present record gives no occasion for us to inquire whether such securities can be taxed a second time at the owner's domicile."

In the case of Beidler v. South Carolina Tax Commission, 282 U. S. 1, 51 S. Ct. 54, 55, 75 L. Ed. 131, opinion by Chief Justice Hughes, the same authorities are cited as recognizing the principle that choses in action may acquire a situs for taxation other than the domicile of their owner "if they have become integral parts of some local business," but with this further statement: "But a conclusion that debts have thus acquired a business situs must have evidence to support it, and it is our province to inquire whether there is such evidence when the inquiry is essential to the enforcement of a right suitably asserted under the federal Constitution. In the present case, beyond the mere fact of stock ownership and the existence of the indebtedness, there is no evidence whatever, having any bearing upon the question, save a copy of the decedent's account with the corporation, taken from his books which were kept by him in his office at Chicago. The various items of debit and credit in this account, in the absence of any further evidence, add nothing of substance to the fact of the indebtedness as set forth in the agreed statement and afford no adequate basis for a finding that the indebtedness had a business situs in South Carolina."

In Ferris v. Kimble, 75 Tex. 476, 12 S. W. 689, our Supreme Court held that promissory notes owned by Judge Ferris, who practiced law in the city of Waxahachie where he maintained an office, but resided outside the city limits, were not taxable by the city. In the opinion it was said that occasionally the

notes were taken to the residence where the owner sometimes, though rarely, transacted business.

But in Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 190 S. W. 189, 190, it was held that certain securities owned by a corporation having its domicile in Houston, Tex., acquired a situs for taxation in the city of Austin, where they were deposited with the state treasurer. And in the opinion of Chief Justice Phillips the following was said:

"According to the ancient rule, all personal property followed the owner and was subject only to the laws of the jurisdiction of his domicile. This was a fiction of the law; and there can be no doubt of the power of a State to modify it by statute.

"In this State promissory notes are by statute expressly made taxable as personal property. Article 7505, Revised Statutes. * * *

"Where a particular business purpose can be accomplished only by locating property at a certain place, and the property is so located and devoted to the purpose for more than a temporary period, it very clearly acquires a situs at that place. The notes in question must, we think, be regarded as having been situated in the City of Austin, on the first days of January, 1908 and 1909. They were accordingly taxable there for those years.

"Ferris v. Kimble, 75 Tex. 476, 12 S. W. 689, is urged by the plaintiff in error as sustaining its position. The case may be said to announce that, as a general rule, promissory notes are taxable at the place of their owner's residence. It was not there decided, however, nor attempted to be decided, that they are incapable of acquiring a situs elsewhere. The facts of the case plainly distinguish it from the present one. The notes of Judge Ferris, the subject of the controversy, were at all times in his possession. They had been placed in the bank vault within the limits of the city of Waxahachie merely for safe-keeping, and no one had access to them but the owner. Being in his possession, they were necessarily taxable at the place of his residence. For this same reason Ferris v. Kimble was differentiated in Hall v. Miller [102 Tex. 289, 115 S. W. 1168].

"It is to our minds illogical to say that promissory notes are incapable of acquiring a distinct situs. They are personal property under our laws. Because of their concrete form they are made use of as property in the everyday transactions of the people. Their presence is generally availed of as an element of such use. Because of this they constitute something more than mere evidences of debt. When they are thus made to perform the functions of tangible personal property, they have all the character of that class of property, and are as fully capable of acquiring a situs apart from their owner's domicile as any property of that class."

In Hall v. Miller, 102 Tex. 289, 115 S. W. 1168, it was held that promissory notes owned by a resident of Missouri were taxable in San Saba county, Tex., by reason of the fact the same were left in the hands of the owner's agent in that county for collection as they fell due. And in the opinion the decisions in Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701, and City of New Orleans v. Stemple, 175 U. S. 309, 20 S. Ct. 110, 44 L. Ed. 174, were cited with approval, as was done in the later decisions of the federal Supreme Court.

In Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395, 27 S. Ct. 499, 51 L. Ed. 853, it was held that notes belonging to the insurance company with its domicile in the state of New York were taxable in the city of New Orleans because the business giving rise to the notes was transacted by the agents of the company in New Orleans, although the notes when taken were sent to the company at its home office. And in the opinion the decisions in Stemple v. New Orleans and Bristol v. Washington County, supra, were cited with approval. Other decisions to the same effect as the foregoing might be cited.

Hence, the issue to be determined here is narrowed to the question whether or not the notes in controversy acquired a situs for purposes of taxation within the city of Fort Worth.

It appears from the evidence shown in the statement of facts that at the time of the trial J. N. Brooker was dead and that Miss Tina Brooker, his niece, had been secretary and treasurer of the appellant corporation ever since its incorporation, and was entirely familiar with all of its business transactions. Her testimony fully supports the findings of fact by the trial court.

And in appellant's brief the following is said: "In the case at bar the uncontradicted evidence shows that these promissory notes, when delivered to the Texas Land & Cattle Company, in Texas, were by it immediately sent out of the state and were either kept in safety deposit boxes at its home office in Delaware, or in safety deposit boxes in other states, but never in Texas."

According to that statement, and the facts found by the trial court, the keeping of the

notes overnight at J. N. Brooker's home was of no more significance in determining their situs for purposes of taxation than the temporary keeping of them in Kansas City, Oklahoma City, or Wilmington, Del.

The facts of this case show that while by reason of the general law pertaining to corporations the domicile of the Texas Land & Cattle Company was in Wilmington, Del., yet its real domicile for transaction of all the business for which it was incorporated was, in fact, Fort Worth, Tex. Under such circumstances it would be unreasonable and unjust to hold that the fiction relied on by appellant should be given controlling effect in this case and fix the situs of the notes in controversy for purposes of taxation in Wilmington, Del., and not in the city of Fort Worth. The evidence supports the finding by the trial court to the effect that the incorporation of the company under the laws of the state of Delaware was a subterfuge for the purpose of evading payment of taxes in the city of Fort Worth.

Accordingly, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Assignments of error not determined in opinion on original hearing will be now disposed of.

Certified copies of delinquent tax rolls, properly certified to the city tax assessor and collector, were admissible in evidence and sufficient to make out a prima facie case as to the regularity of the assessment and levy of the taxes sued for. Nor have appellants pointed out wherein the levy and assessments for the years in controversy were insufficient. Article 3720, Rev. Civ. Statutes; First Baptist Church v. City of Fort Worth (Tex. Com. App.) 26 S.W.(2d) 196; Dill v. Rising Star (Tex. Com. App.) 269 S. W. 769.

By chapter 25, section 29 of its charter, the city of Fort Worth was empowered to back assess for all delinquent taxes sued for. American Indemnity Co. v. City of Austin, 211 S. W. 812; Texas Fidelity & Bonding Co. v. City of Austin, 211 S. W. 818. In both of those cases writs of error were granted by the Supreme Court, and disposition of the first case by that court appears in 112 Tex. 239, 246 S. W. 1019; and the second case in 112 Tex. 229, 246 S. W. 1026. But the conclusion of the Court of Civil Appeals in both of those cases that the city of Austin was authorized to make back assessments for delinquent taxes was not disturbed.

We overrule the further assignment by appellants presenting the contention that the city was not entitled to a lien on the notes for the taxes in controversy. Article 1060, Rev. Civ. Statutes; Mission Independent School District v. Armstrong (Tex. Com. App.) 222 S. W. 201.

In reply to appellant's sixteenth and seventeenth assignments complaining of excessiveness of the judgment, the appellee city has filed in this court a remittitur in the sum of $300.34, taxes and penalties recovered on the Carl Smith note for the year 1931. According to testimony of Miss Tina Brooker, secretary and treasurer of appellant, that note was not in existence on January first of that year as it had been foreclosed during the preceding year.

Accordingly, the judgment of the trial court will be so reformed as to credit the same with the amount of that remittitur, but in all other respects the motion for rehearing is overruled. Costs of appeal taxed against appellants and appellee, share and share alike.